787 A.2d 312

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas MEADOWS, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 17, 2000.

Decided Dec. 31, 2001.

---

Thomas C. Egan, III, Blue Bell, for Thomas Meadows.

Mary Ann Killinger, Norristown, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

Appellant Thomas Meadows appeals an order of the Montgomery County Common Pleas Court denying his petition under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* We affirm.

The following overview of the case is taken from the Opinion of the Court affirming the judgment of sentence on direct appeal:

The Commonwealth presented the testimony of Amber Cintron, an eyewitness to the events leading to the death of her paramour, James Hayes. While married, Mr. Hayes shared an apartment with Ms. Cintron and her two children. On the evening of March 30, 1984, Mr. Hayes accompanied the three of them to dinner and a musical. They returned to the apartment after 11:30 p.m. in separate vehicles. After walking to the door of the apartment together, the children entered the apartment first, followed by Ms. Cintron and Mr. Hayes. They were startled by a man carrying a gun who followed right behind them. The man was not wearing a mask, and Ms. Cintron recognized him as someone she had known before.

The man asked Mr. Hayes, "Where is the money?" Mr. Hayes replied that he did not have any money. Ms. Cintron heard Mr. Hayes call the man by the name of "Jake." While the man pointed the gun at him, Mr. Hayes took a trash bag containing marijuana from a closet and gave it to him, saying that it was worth $15,000. The man searched through Ms. Cintron's pocketbook and took her keys after emptying the contents on the table.

The man then searched Mr. Hayes and removed his wallet and car keys. He put the wallet on the table. After chiding Mr. Hayes for cheating on his wife, he told Mr. Hayes to get down on the floor. Mr. Hayes lay face down on the floor, and the man tied his hands behind his back with a telephone cord. The man fired a shot into his back at close range. Ms. Cintron started screaming and the man aimed his gun at her. She begged him not to shoot her because she had known him since she was a young girl. Unmoved, he shot her twice in the leg area. He then left with the car keys, but without the trash bag of marijuana.

Officer Lawrence Santee, a Cheltenham Township police officer, responded to the report of a shooting and arrived at the scene. When he entered the apartment, he saw Ms. Cintron sitting in front of a love seat and her two children, who were not injured, sitting across the room on a sofa. In the middle of the room, he saw the body of Mr. Hayes

laying face down with his hands tangled up in telephone wire. He also observed a large trash bag in the room.

An autopsy performed on Mr. Hayes established that the cause of death was a gunshot wound of the trunk. Ms. Cintron survived the shooting and was hospitalized. During her hospital stay, she spoke with detectives and identified the shooter as a man from her neighborhood whom she had known since she was a girl. She described him as a black male in his thirties whom Mr. Hayes had referred to as "Jake." The police learned later that the Appellant had a half-brother whose name is Jacob Adams.

Ms. Cintron was unable to recall the man's name, but told the police that she would be able to identify him from a photograph. She told the police that when she was younger, the man had rented a room in a house located near a candy store in her neighborhood. She had seen him several times since then, including one occasion when he had given her a ride in his yellow Mercedes automobile.

During the first week of her hospitalization, Ms. Cintron was shown a photographic array of black males. The Appellant's photograph was not in the array and she did not identify any of the men as the shooter. She was also shown a photograph of Jacob Adams, the Appellant's half-brother. She could not remember ever having seen him before.

The police soon learned the name of Thomas Meadows from a woman who had rented a room to him in the house described by Ms. Cintron. The woman had identified the names of several former tenants, one of whom was the Appellant. With that information, the police were able to include the Appellant's photograph in a separate array of suspects. When Ms. Cintron examined the photographs, she immediately identified the Appellant as the shooter. She was visibly shaken by this experience and began screaming. A nurse insisted that the police officer leave her room.

Police officers returned to the hospital room later to take Ms. Cintron's statement. Ms. Cintron reexamined the pho-

tographs and again identified the Appellant. She was able to tell the officers that his name was "Tom."

An arrest warrant was issued for the Appellant, but the police were unable to locate him at his last known address. A woman, who identified herself as the Appellant's wife, was living at the residence. The police conducted regular surveillance of the house and contacted various government agencies to broaden their search efforts. Six years passed before the police were able to apprehend the Appellant. He was arrested in Philadelphia on March 2, 1990.

*Commonwealth v. Meadows*, 534 Pa. 450, 633 A.2d 1081, 1083–84 (1993).

Following a jury trial, Appellant was convicted of murder of the first degree, attempted murder, two counts of aggravated assault, two counts of theft, five counts of robbery, burglary, and possession of an instrument of crime. The jury returned a sentencing verdict of death, finding two aggravating circumstances—the defendant committed the killing while in the perpetration of a felony, and the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(6) and (7) respectively—which outweighed one mitigating circumstance—the defendant had no criminal convictions since 1971.[1] This Court affirmed Appellant's convictions and death sentence on direct appeal. *Commonwealth v. Meadows*, 534 Pa. 450, 633 A.2d 1081 (1993). Appellant then filed the within PCRA petition and appointed counsel filed an amended petition. Following a hearing, the trial court denied relief. The matter is now before our Court for review.[2]

On appeal, Appellant raises several issues alleging error that occurred during the guilt phase of his trial. He also alleges that both trial and appellate counsel were ineffective in failing to raise these issues. Likewise, Appellant raises sever-

[1]. This mitigating circumstance was stipulated to and presented as "any other evidence of mitigation concerning the character or record of the defendant" pursuant 42 Pa.C.S. § 9711(e)(8).

[2]. This Court directly reviews the denial of post-conviction relief in death penalty cases. 42 Pa.C.S. § 9546(d).

al issues regarding errors during the penalty phase of his trial; again, he asserts that both trial and appellate counsel were ineffective for failing to raise these claims on direct appeal.

This Court's review of the denial of post-conviction relief is limited to an examination of whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. *Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516 (1997).

Appellant's first set of claims are related. Initially, he argues that the PCRA court erred in failing to grant him relief in the form of a new trial where, as here, the jury returned verdicts of guilt on the charges of first-degree murder, second-degree murder and third-degree murder, verdicts which are mutually exclusive and which, he argues, operate to nullify his first-degree murder conviction. In conjunction with his initial argument, Appellant maintains that because the verdicts of first, second and third degree murder are mutually exclusive, the trial court improperly molded the verdicts of guilt on the charges of first, second, and third degree murder to a conviction on the charge of first degree murder alone. Along this same vein, Appellant asserts that the trial court further erred by failing to poll the jury regarding all three verdicts rather than on first degree murder only.

As to his claim that his convictions on the charges of first, second and third degree murder were improper as these crimes are mutually exclusive, Appellant points out that first degree murder by definition requires a finding of specific intent by a jury, where as second degree murder may or may not include such a finding and where third degree murder specifically does not require such finding. We recently addressed the exact issue raised by Appellant in *Commonwealth v. Young,* 561 Pa. 34, 748 A.2d 166 (1999). There, the appellant alleged that the jury's verdicts of guilt for both first degree murder and third degree murder were legally inconsistent since a conviction for first degree murder requires a finding that a defendant had a specific intent to kill, while the

conviction for third degree murder requires the opposite finding, that the defendant did not have a specific intent to kill.

This Court, in a unanimous decision, explained that there is no inconsistency where a jury convicts a defendant of both first and third degree murder. We stated:

Contrary to Appellant's assertion, third degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto. Thus there is no inconsistency in the jury's convicting Appellant of both first and third degree murder.

*Young,* 748 A.2d at 174–5.

Based upon the foregoing discussion in *Young,* Appellant's claim that he is entitled to a new trial because the jury's verdicts were inconsistent lacks merit. Likewise, Appellant's claim that it was error for the trial court to mold the verdicts of guilt on the charges of first, second, and third degree murder to a conviction on the charge of first degree murder alone lacks merit as this claim was also raised by the appellant in *Young* and we rejected such claim based upon our conclusion that the verdicts are not mutually exclusive.

Appellant acknowledges our decision in *Young;* however, he states that he disagrees with our holding therein and implores the Court to revisit the issue. We decline to do so. *Young* was a recent unanimous decision of the Court and expresses our view with regard to the consistency of convictions for both first and third degree murder. We see no reason to either revisit or revise our holding in *Young.*

Finally, with regard to this matter, Appellant claims that it was error for the trial court not to poll the jury on all

the charges. Again, as we do not find that it was improper for the trial court to mold the verdicts, we do not view the court's polling of the jury, limited to their vote regarding first degree murder, to have been improper.

 Next, Appellant argues that the trial court erred by inserting certain case specific facts into its jury instructions on the charge of first degree murder. Specifically, Appellant complains that the following language given by the court on the charge of first degree murder includes facts which served to emphasize portions of the trial that were inflammatory and advantageous only to the Commonwealth. The questioned passage is as follows:

> When deciding whether the Defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct, and the attending circumstances that may show his state of mind, including testimony that the Defendant waited outside the apartment when Amber Cintron, James Hayes, and her two children came home; that the Defendant made James Hayes lie on the floor, that he tied his hands behind his back; and that he shot him at close range.

N.T., July 19, 1990 at 682. Appellant posits that a trial court should not be permitted to set forth its own recollection of the facts in a factually simple case such as this. Appellant cites no authority for this proposition and, in fact, this is not the standard. As conceded by Appellant, in *Commonwealth v. Leonhard,* 336 Pa.Super. 90, 485 A.2d 444 (1984), the Superior Court explained that it is not improper for an instructing court to refer to the facts and/or the evidence of the case when giving a charge. The court noted:

> On one hand, the trial court must frame the legal issues for the jury and instruct the jury on the applicable law, while on the other hand, it must not usurp the power of the jury to be sole judge of the evidence. See *Commonwealth v. Goins,* 457 Pa. 594, 598, 321 A.2d 913, 915 (1974). Plainly, these principles may conflict with each other, for in order to instruct the jury on the law the court may have to refer to

the evidence. The proper balance to be struck will depend heavily on the facts and circumstances of each case. See *Commonwealth v. Vernille,* 275 Pa.Super. 263, 271, 418 A.2d 713, 717 (1980). However, some general guidelines have been formulated. Thus the court may not comment on, or give its opinion of, the guilt or innocence of the accused. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972). Nor may it state an opinion as to the credibility of witnesses, nor remove from the jury its responsibility to decide the degree of culpability. See *Commonwealth v. McClendon,* 478 Pa. 108, 115, 385 A.2d 1337, 1340 (1978); *Commonwealth v. Butler,* 448 Pa. 128, 134–35, 291 A.2d 89, 92 (1972). See also, 3 American Bar Association Standards for Criminal Justice, Standard 15–3.8(a)(2d ed., 1980). However, the court may summarize the evidence and note possible inferences to be drawn from it. In doing so, the court may "... express [its] own opinion on the evidence, including the weight and effect to be accorded it and its points of strength and weakness, providing that the statements have a reasonable basis and it is clearly left to the jury to decide the facts, regardless of any opinion expressed by the judge."

*Id.* at 95, 485 A.2d 444.

Citing to *Leonhard,* the PCRA court found that the trial court's charge was proper. The PCRA court noted that the instruction apprised jurors of the legal principles applicable to the case and noted facts that were properly in evidence. The PCRA court further noted that the charging court did not give undue importance to any of the listed factors, leaving to the jury the ultimate determination of the facts of the case.

We conclude that the PCRA court's determination regarding the propriety of the given charge was correct and that Petitioner's request for a new trial based upon such error is unwarranted. As noted by the PCRA court, the trial court's instruction properly informed the jury of the law and, while noting certain facts of record, left the ultimate determination of the facts to the jury.

██ Next, Appellant alleges that the prosecutor improperly failed to disclose the fact that Amber Cintron, its only eyewitness, and her children were housed for free at a "luxurious hotel, before, during and after trial . . . . [where] [s]he received free room, board, movies, lodging, etc." Appellant's brief at 28. Appellant maintains that had this information been disclosed, he could have used it to impeach Cintron's credibility at trial presumably based upon the theory, that her testimony resulted from such extravagant treatment. This assertion is meritless.

The PCRA court noted that the evidence offered before it showed that Cintron and her children where housed only during the week of trial and that the district attorney's office provided Cintron and her children with food and lodging at the local hotel it normally used for housing witnesses. Furthermore, the court noted that there was nothing about the expenses incurred that would substantiate Appellant's claim that Cintron's testimony was a product of extravagant hotel accommodations and expensive meals. As the PCRA court's findings are supported in the record, Appellant is not entitled to further relief.

Next, Appellant asserts that both trial and appellate counsel were ineffective for failing to raise all of the foregoing claims of error. This assertion fails.

██ In order to demonstrate entitlement to relief for a claim of ineffectiveness of counsel, Appellant would have to demonstrate: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her conduct; and (3) that the petitioner was prejudiced by counsel's performance, i.e., that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039 (1999).

██ Here, because none of the claims asserted by Appellant have merit, counsel cannot be deemed ineffective for not having raised them. Accordingly, Appellant cannot meet the

first prong of the foregoing test, that there is merit to the underlying claim, and his ineffectiveness claims fail.

Appellant next claims that his counsel was ineffective at the penalty phase. Specifically, he asserts that counsel was ineffective for pursuing a "residual doubt" strategy, for failing to call certain witnesses, including Appellant, and for stipulating that Appellant had no criminal convictions since 1971, thereby opening the door for the Commonwealth to introduce his pre–1971 convictions.

At the PCRA hearing, Appellant's trial counsel testified that rather than call Appellant or certain other witnesses to the stand at the penalty hearing, he choose to emphasize the weakness of the Commonwealth's case against Appellant and argue that the jury possibly erred in convicting him. Through this strategy, counsel hoped that he could invoke in the jury a residual doubt about their verdict, which would, in turn, cause them to spare Appellant's life.

Appellant now argues that counsel was ineffective in this regard. As noted previously, we will grant relief for counsel's ineffectiveness where appellant has shown that there is merit to the underlying claim, that counsel had no reasonable basis for his course of conduct, and that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Jacobs*, 556 Pa. 138, 727 A.2d 545 (1999). Appellant bears the burden of proving all three prongs of this standard. *Id.* We have held that the same standard applies in penalty-phase proceedings, though, arguably, the question of guilt or innocence is, at that stage, no longer at issue. *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1250 (1999).

At the hearing before the PCRA court, trial counsel and Appellant testified regarding the decision not to call Appellant at the penalty hearing. Counsel testified that he advised Appellant not to testify at the hearing because he did not believe the jury would find Appellant to be credible. Appellant testified that he did not testify because counsel told

him he did not think such testimony would be necessary. Appellant further stated that he accepted counsel's advice because he trusted him.

We do not view counsel's advice and decision not to call Appellant as a witness to be ineffective. Appellant chose to follow the advice of counsel and counsel gave such advice because he did not think Appellant would be an effective witness. Thus, counsel had a reasonable basis for his action. Moreover, Appellant has failed to meet his burden of showing how he was prejudiced by the absence of his testimony at the penalty hearing.

 Regarding Appellant's claim that counsel was ineffective in failing to call other witnesses at the hearing, we note that with the exception of one witness, Appellant fails to identify these witnesses, indicate their willingness to testify or explain what testimony would have disclosed. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the appellant must show: (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced the appellant. *Commonwealth v. Crawley*, 541 Pa. 408, 663 A.2d 676, 679–80 (1995). Clearly Appellant has failed to meet his burden in this regard.

 Appellant claims that counsel was ineffective in failing to call Ayisha Harrison, the daughter of his girlfriend, Linda Harrison, to testify during the penalty phase. At the PCRA hearing, Ayisha Harrison testified that Appellant lived with she and her mother and brother. She described Appellant as having been a father figure to her. She stated that if she had been asked, she would have testified to this fact at Appellant's penalty phase hearing.

The PCRA court concluded that counsel was not ineffective in not calling Ayisha Harrison at the penalty hearing. Linda Harrison, Ayisha's mother, did testify at the penalty hearing.

She testified about Appellant's status as a good family man. Specifically, she stated that she and Appellant lived together for eight years, that Appellant supported her and her two children from a previous relationship and that Appellant helped raise her children. Because Ayisha Harrison's testimony would have been merely cumulative of her mother's testimony, the court concluded that counsel was not ineffective in failing to call her as a witness. We agree.

 Regarding trial counsel's decision not to present more witnesses, including Appellant, and instead pursue a residual doubt strategy, the trial court noted the following:

> Trial counsel testified that the defense strategy in the penalty phase centered on urging the jury to recognize the mistake they had made in the guilt phase and to minimize the damage by not sending Defendant to his death. Accordingly counsel focused, not on Defendant's character, which he believed the jury had already decided on, but rather on weaknesses in the prosecution's case and on Ms. Cintron's lack of credibility.

> \* \* \*

> Counsel's strategy of attempting to shift the jurors' focus to lingering or residual doubt they may have had about his guilt was a strategy decision reasonably designed to effectuate his client's interests.

PCRA court's opinion at 12. In the context of this case, given that counsel did not view Appellant as being an effective witness and the lack of other witnesses, we agree with the PCRA court that counsel was not ineffective for choosing the strategy he chose at the penalty hearing.

 Finally, Appellant claims that counsel was ineffective at the penalty hearing for failing to object to the Commonwealth's admission of five of his previous convictions. Lawyers for the Commonwealth and Appellant's counsel entered into a stipulation that Appellant had not been convicted of any crime, other than the current murder conviction, since 1971. This evidence was introduced by counsel as a mitigating

circumstance. The Commonwealth, as rebuttal, introduced certified copies of five pre 1971 convictions, one each for assault and drug possession and three for larceny. Appellant argues that introduction of these crimes was improper and that counsel was ineffective in not objecting to their admission.

The PCRA court found that there was arguable merit to Appellant's claim that counsel should have objected to the admission of these crimes. Specifically the court stated:

> Defense counsel stated at the evidentiary hearing he did not object to the admission of prior convictions because he believed such evidence to be admissible. Certainly, the Commonwealth is not limited to introducing evidence of aggravating circumstances but can also rebut evidence of mitigating circumstances, *Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441 (1997), however, rebuttal consisting of prior convictions is limited by the guidelines set forth in *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (Pa.1987). In *Randall*, the Supreme Court held that evidence of prior convictions could be introduced for impeachment purposes if the conviction was for an offense involving dishonesty or false statement, and the date of the conviction or the last day of confinement is within ten years of the trial date, and if a period of ten years has expired, the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect. *Id.* at 414, 528 A.2d at 1329.

> Here neither assault nor drug possession is a crimen falsi offense, and the larceny convictions, which are crimen falsi offenses, are at least twenty years old. There is at least arguable merit to the claim that defense counsel should have objected to the admissibility of these prior convictions in the penalty phase.

PCRA court opinion at 10.

The PCRA court went on to conclude, however, that even though Appellant's claim in this regard had arguable merit, Appellant was not prejudiced by the admission of his pre 1971 convictions since there was evidence at the guilt phase regard-

ing Appellant's involvement in the drug world. The court further concluded that given the cold-blooded nature of the execution style murder, it could not be said that the jury would have opted for a life sentence in the absence of this evidence.

First, we question the trial court's reliance on *Randall* as support for its determination that Appellant's claim in this regard has arguable merit. In *Randall,* we addressed the question of when a prior conviction may be used for purposes of impeaching a defendant who testifies at trial on his own behalf. We held that evidence of prior convictions can be introduced for the purpose of impeaching credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date.

Here, the Commonwealth did not introduce Appellant's prior convictions in order to impeach his credibility at the guilt phase of trial, rather, the Commonwealth introduced the convictions as rebuttal to Appellant's evidence in mitigation that he was crime free since 1971. *Randall* does not specifically address this situation. Thus, its applicability here is questionable. Nevertheless, even if we were to conclude that this claim has arguable merit, we agree with the PCRA court's conclusion that Appellant did not suffer prejudice warranting a new trial.

Here, the jury specifically found the mitigating circumstance that Appellant was crime free since 1971. Secondly, at the time of trial, July 1990, Appellant was 43 years old. Appellant was 24 years old in 1971. Thus, we conclude that any negative effect that may have resulted from the jury knowing about Appellant's pre 1971 convictions was outweighed by their knowledge that Appellant had no criminal history since the age of 24. Thus, we conclude that counsel was not ineffective in failing to object to the introduction of these convictions at the penalty phase.

Having disposed of all of Appellant's arguments and finding no merit to any of his claims, we affirm the Order of the

Montgomery County Common Pleas Court.[3]

Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice NIGRO concurs in the result.

CAPPY, Justice, Concurring.

I join the majority opinion for the reasons as more fully set forth in the concurring opinion of this author filed in *Commonwealth v. Lambert*, 787 A.2d 287 (Pa.2001).

CASTILLE, Justice, Concurring.

I concur in the result but not in the approach employed by the majority opinion. The majority opinion gives the perhaps-unintentional impression that appellant has raised claims of trial court error and trial counsel ineffectiveness which are reviewable on the merits in this PCRA proceeding. Those particular claims, however, were available to appellant on direct appeal and, thus, they are waived under the PCRA. *See Commonwealth v. Pierce*, 786 A.2d 203, 212 (Pa.2001). The only claims reviewable on the merits here are appellant's constitutionally distinct contentions that his direct appeal counsel, who was different from trial counsel, was ineffective for failing to raise these claims of trial court error and trial counsel ineffectiveness. Because the majority opinion ignores the statutory waiver provisions of the PCRA and appears to review non-cognizable and indisputably waived claims on the merits, I cannot join it.

In order to establish his eligibility for relief under the PCRA, a petitioner must affirmatively show, among other things, that his claim has not been waived. 42 Pa.C.S.

3. The prothonotary of the Supreme Court of Pennsylvania is directed to transmit, within ninety days, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor and to the Secretary of Corrections, pursuant to 42 Pa.C.S. § 9711(i).

§ 9543(a)(3). An issue is waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." *Id.* § 9544(b). Thus, the "very terms" of the PCRA "exclude[ ] waived issues from the class of cognizable PCRA claims." *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). Moreover, this Court has made clear that our practice of relaxing waivers arising from our own procedural rules in direct capital appeals cannot operate to excuse waivers that arise from application of the terms of the PCRA. *Id.*

Appellant in this case was represented on direct appeal by counsel other than trial counsel. On that appeal, appellant pursued claims of trial court error as well as multiple claims of trial counsel ineffectiveness, including three claims relating to the guilt phase of trial, and one claim respecting the penalty phase. *Commonwealth v. Meadows,* 534 Pa. 450, 633 A.2d 1081, 1087, 1089 (1993). New counsel was obliged to raise the ineffectiveness claims after discerning them, for "[i]t is well-established that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant." *Commonwealth v. Green,* 551 Pa. 88, 709 A.2d 382, 384 (1998) (collecting cases); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).[1] All claims were reviewed on the merits and relief was denied.

On this PCRA appeal, appellant identifies eight claims in his statement of the questions presented. The first three are claims of trial court error in the guilt phase. Since these claims were available to appellant on direct appeal, but were not raised, they would be waived as claims of trial error under the PCRA. 42 Pa.C.S. § 9543(a)(3), § 9544(b). *Pierce, supra.* Appellant obviously recognizes that the claims are waived, for his very next claim alleges that both trial and direct appeal counsel were ineffective for failing to raise the three claims of

1. This Court recently granted allocatur to determine whether this practice, which began with the footnote in *Hubbard,* should be reconsidered. *See Commonwealth v. Grant,* 780 A.2d 601 (Pa.2001).

trial court error. The claim of appellate counsel ineffectiveness, unlike the claims of trial court error and the claim of trial counsel ineffectiveness, could not be raised on direct appeal; thus, this particular claim would not be waived under the PCRA. Moreover, since the PCRA specifically recognizes claims of counsel ineffectiveness, 42 Pa.C.S. § 9543(a)(2)(ii), a claim that direct appeal counsel was ineffective is available to appellant now. *Pierce, supra.*

Appellant's fifth, sixth, and seventh claims allege trial counsel ineffectiveness in the penalty phase, while his eighth and final claim alleges that trial and appellate counsel were ineffective for failing to raise and preserve "the afore-mentioned issues"—presumably, a reference to the three immediately preceding claims of penalty-phase ineffectiveness. To the extent appellant assails trial counsel's penalty phase performance, his claims would be waived under the PCRA, since appellant could have raised those claims along with his other trial counsel ineffectiveness claims on direct appeal. *Pierce, supra.* The claim of appellate counsel ineffectiveness respecting those issues, however, would be cognizable under the PCRA. *Id.*

In summary, the only non-waived claims available to appellant on PCRA review are his claims sounding in appellate counsel's ineffectiveness. These are distinct, substantive Sixth Amendment claims separate and apart from the underlying claims of trial court error and trial counsel ineffectiveness. *Pierce, supra; see also Commonwealth v. Williams,* 782 A.2d 517, 525 (Pa.2001); *id.* at 535–36 (Castille, J., concurring). They are subject to the same general test applied under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny. *Smith v. Robbins,* 528 U.S. 259, 285–89, 120 S.Ct. 746, 764–66, 145 L.Ed.2d 756 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel"); *Pierce, supra,* 786 A.2d at 212–13. Claims involving appellate counsel ineffectiveness, moreover, involve concerns unique to appellate practice. *Commonwealth v. Lambert,* 787 A.2d 327, 337–38, (Pa.2001) (Opinion Announc-

ing Judgment of Court). Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. *Jones v. Barnes,* 463 U.S. 745, 750–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983). "[A]ppellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins,* 528 U.S. at 288, 120 S.Ct. 746 (characterizing *Barnes* ). *Accord Lambert.*

Appellant's actual argument on his multiple claims for relief consists of a single narrative, broken only by a heading which separates his penalty phase claims from the guilt phase claims which precede them. Argument, 18.[2] Both the guilt phase and the penalty phase portion of appellant's argument specifically develop his claims under the rubric of trial counsel ineffectiveness, and not as stand-alone claims of trial or PCRA court error. Appellant does not separately develop any argument respecting appellate counsel; instead, his only reference to appellate counsel consists of an assertion, at the end of his argument on the guilt phase claims of trial counsel ineffectiveness, stating: "And appellate counsel was ineffective for failing to raise the aforementioned issues." *Id.*

The majority acknowledges the framing of appellant's claims in his statement of questions presented, but then ignores the PCRA waiver provision, as well as the fact that appellant's **argument** recognizes that the underlying versions of his claims are waived and, accordingly, actually **pursues** his claims only under the rubric of counsel ineffectiveness. The majority then proceeds to analyze each claim individually and review it as if it were a valid, non-waived claim cognizable under the PCRA. Ultimately, the majority finds that each claim lacks merit. With respect to the layered claims that encompass appellate counsel, the majority does not distinguish between the performance of trial and appellate counsel and engages in no substantive analysis focusing upon appellate

2. Appellant's brief is not paginated. The numbering in text is my own, beginning with the first page of appellant's argument.

counsel. *Compare Pierce, supra.* Instead, the majority concludes that, the underlying claims having been determined to lack merit, the ineffectiveness (or layered ineffectiveness) claims necessarily fail. The majority's approach thus gives the impression that appellant's underlying claims of trial court error are non-waived, viable PCRA claims, though ultimately meritless. It gives the further impression that appellant's claims of trial counsel ineffectiveness are additional, distinctly reviewable claims under the PCRA.

To the extent the majority reviews the waived claims of trial error and trial counsel ineffectiveness on the merits, its approach is simply erroneous. *Compare Pierce, supra.* Moreover, appellant himself recognizes that his claims of trial court error in the guilt phase are waived under the PCRA and, thus, he argues them under ineffectiveness jurisprudence. There is no reason for the majority to *sua sponte* convert those Sixth Amendment claims into non-constitutional claims of trial court error. This is particularly so because it is not apparent that all of those claims, so characterized, would be cognizable under the PCRA if they were not waived. *See* 42 Pa.C.S. § 9543(a)(2)(I)-(vii) (listing only claims cognizable under PCRA).

The underlying claims reached by the majority, having been waived, are not available to appellant on their own. The lack of merit in those claims is pertinent under the PCRA, if at all, only for the limited purpose of exploring whether appellant's **cognizable** claims of appellate counsel ineffectiveness entitle him to relief. *Pierce, supra.* Their potential relevance, thus, is as follows: if the underlying claims lack merit, appellate counsel plainly was not ineffective for failing to pursue them, since it is settled that counsel is not ineffective for failing to pursue meritless claims. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121, 128 (1994), *cert. denied, Peterkin v. Pennsylvania,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *Commonwealth v. Tarver,* 491 Pa. 253, 420 A.2d 438, 438 (1980).

But the majority need not go that far, for appellant has made no attempt whatsoever to develop his claims of appellate

counsel ineffectiveness. Although appellant's boilerplate assertion of appellate counsel ineffectiveness is sufficient for him to receive merits review of his cognizable claims that appellate counsel was ineffective under this Court's recent precedent, *see Lambert*, 787 A.2d 327, 336–37, his failure to forward relevant argumentation under *Strickland* nevertheless dooms these claims to failure on the merits. *Id.* at 338–39. *See also Pierce, supra*, 786 A.2d at 221; *Commonwealth v. Rivers*, 566 Pa. 239, 786 A.2d 923, 929 (2001) (Opinion Announcing Judgment of Court); *id.* at 937–38 (Castille, J. concurring); *id.* at 941–42 (Saylor, J., joined by Cappy, J., dissenting) (joins lead opinion and concurring opinions "in emphasizing that post-conviction petitioners absolutely must plead and support the essential elements of a claim under the Post Conviction Relief Act in order to be entitled to a hearing on their claims, and must establish those essential elements to demonstrate eligibility for relief"). For example, appellant has not even attempted to show how the claims that appellate counsel failed to pursue offered a greater prospect for success than the claims that appellate counsel actually elected to pursue. *See Barnes.*

In my view, this Court should make it explicitly clear, as we recently did in *Pierce*, that the only claims that are reviewable on this particular appeal are the claims of appellate counsel ineffectiveness. Any other version of appellant's claims is waived since it could have been raised on direct appeal. The question of the proper manner in which to analyze claims under the PCRA is not simply elevation of form over substance. Capital cases rarely end in this Court, but are subject to further review on federal habeas corpus. That review often involves complex issues of issue preservation and fair presentation, *i.e.*, exhaustion and procedural default. At that point, what might appear to be form now quite often becomes as important, if not more important, than substance. In recognition of this continuum of review in capital cases, I think it essential that this Court (1) be consistent in its application of the PCRA, and (2) be precise as to what claim it is that this Court deems reviewable under Pennsylvania law, and why.

Because the majority opinion gives the mistaken impression that appellant's waived claims of trial court error and trial counsel ineffectiveness are reviewable on the merits under the PCRA, and thereby ignores the express language of the PCRA and the import of this Court's holding regarding relaxed waiver in *Albrecht*, I cannot join in its approach.

SAYLOR, Justice, Concurring.

Concerning Appellant's penalty phase claim that trial counsel was ineffective in failing to proffer an adequate case of mitigation, the majority ultimately concludes that the strategy of limiting the presentation to a theory of residual doubt was reasonable given that counsel did not view Appellant as being an effective witness and the lack of other witnesses. Majority Op. at 320. But as this Court has recognized, and as is widely recognized in other jurisdictions, capital defense counsel is obliged to perform an adequate pre-trial investigation concerning potential mitigation evidence for use in a capital sentencing proceeding. *See Commonwealth v. Basemore*, 560 Pa. 258, 289, 744 A.2d 717, 735 (2000); *Commonwealth v. Williams*, 557 Pa. 207, 248, 732 A.2d 1167, 1189 (1999); *see also Carter v. Bell*, 218 F.3d 581, 595 (6th Cir.2000)(deeming defense attorneys' performance deficient where they failed to investigate substantial avenues of mitigation, opting instead to rely solely on a theory of residual doubt); *accord Williams v. Taylor*, 529 U.S. 362, 395–97, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000). Here, trial counsel conceded at a post-conviction hearing that he failed to investigate basic areas of potential mitigation evidence. *See, e.g.*, N.T., Jun. 28, 1998, at 82. Moreover, although certainly a residual doubt theory may, in an appropriate case, present an effective argument to a capital sentencing jury, *see generally Lockhart v. McCree*, 476 U.S. 162, 181, 106 S.Ct. 1758, 1769, 90 L.Ed.2d 137 (1986), its selection should not be regarded as excusing the obligation to investigation other potential avenues. *See Blanco v. Singletary*, 943 F.2d 1477, 1501–02 (11th Cir.1991)(finding trial counsel ineffective where "the ultimate decision that was reached not to call witnesses [for mitigation] was not a result of

investigation and evaluation, but was instead primarily a result of counsels' eagerness to latch onto defendant's statements that he did not want any witnesses called"). In this regard, I would emphasize the impossibility of making an informed decision that a chosen mitigation strategy is superior to others without first exploring the availability and strength of other mitigation theories. Thus, I would find that the post-conviction record here presented supports a conclusion that there is arguable merit to Appellant's contention that his trial counsel's performance was deficient in failing to conduct an adequate investigation concerning mitigation evidence.

In my view, however, the primary weakness in this post-conviction claim lies in Appellant's failure to establish prejudice. In contrast to cases in which a PCRA court dismissed a post-conviction claim without a hearing in the face of pleadings and affidavits setting forth a substantial case in mitigation, see, e.g., Williams, 557 Pa. at 245–49, 732 A.2d at 1187–90, here, the PCRA court conducted a hearing and therefore provided Appellant the opportunity to develop a record of available strategies which could be compared and contrasted with the residual doubt tactic actually pursued. See Williams, 557 Pa. at 248, 732 A.2d at 1189 ("A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued."). At the hearing, in addition to his own testimony concerning good work, school and prison records, Appellant offered solely the abbreviated testimony of a single character witness to establish that Appellant had been of significance in her life. This approach contrasts sharply with instances in which, for example, a post-conviction petitioner who can demonstrate a deficient investigation supplies a substantial history of mental health disorder and treatment and associated psychiatric evidence, see, e.g., Williams, 557 Pa. at 245–49, 732 A.2d at 1187–88; see also Carter v. Bell, 218 F.3d at 590–600, which, if believed, would at least provide some form of explanation concerning how it is that the defendant came to his present circumstances to aid the sentencing

tribunal in making its judgment concerning whether life imprisonment or death is the appropriate penalty for the capital crime involved. *See Williams v. Taylor*, 529 U.S. at 398, 120 S.Ct. at 1515 (concluding that "the graphic description of Williams' childhod, filled with abuse and privation, or the reality that he was 'borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability").

Here, by contrast, I would conclude Appellant's evidence simply does not establish that alternative not chosen offered a potential for success greater than that which was pursued. Hence it is that I am able to join the majority's disposition of this claim.