940 A.2d 323

COMMONWEALTH of Pennsylvania, Appellee

v.

Ronald GIBSON, Appellant.

Supreme Court of Pennsylvania.

Submitted June 26, 2002.

Decided Dec. 2, 2005.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## ORDER

PER CURIAM.

AND NOW, this 2nd day of December, 2005, this matter is remanded for evidentiary development and findings and conclusions, limited to the claim of ineffectiveness assistance of counsel on direct appeal associated with Claim No. III raised in Appellant's brief in this Court (styled as "The PCRA court erred in concluding that trial counsel's failure to investigate and present evidence of Appellant's severe intoxication at the time of the murders, history of drug and alcohol abuse, and of his dysfunctional family life did not constitute ineffective assistance where trial counsel[ ] candidly admitted that he undertook absolutely no investigation into potential penalty phase defenses"). In its opinion containing the factual findings and conclusions of law, the PCRA court is directed to address all aspects of the layered ineffectiveness claim, including the underlying claim of ineffective assistance of trial counsel.

Supplemental briefing in this Court is authorized, with Appellant's brief (if any) being due within 30 days after due

notice to counsel following the docketing of the PCRA court's opinion, and any supplemental briefing by the Commonwealth's being due within 15 days thereafter.

Jurisdiction is retained.

Chief Justice CAPPY and Justice BAER are with the PER CURIAM remand order.

Justice NIGRO files a concurring and dissenting statement.

Justice EAKIN files a dissenting statement in which Justice CASTILLE and Justice NEWMAN join.

Justice NIGRO, concurring and dissenting.

I agree with the majority that Appellant is entitled to a remand regarding his layered ineffectiveness claim that appellate counsel was ineffective for not raising trial counsel's failure to investigate and present certain mitigating evidence at his penalty phase hearing, but I differ as to the scope of the remand to which Appellant is entitled. While the majority remands this matter for a full evidentiary hearing on Appellant's claim, and specifically on Appellant's claim as it relates to trial counsel, I would only remand the matter to allow Appellant to properly develop his claim of appellate counsel's ineffectiveness pursuant to this Court's decision in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), as I believe Appellant has already demonstrated on the record before us that trial counsel was ineffective at Appellant's penalty phase hearing.

The facts relevant to the only issue subject to the majority's remand are as follows. Appellant was originally represented by Thomas Ciccone, Esq., a court-appointed attorney. A few days before trial, Appellant retained Oscar Gaskins, Esq. to represent him. Given that he was hired only a short time before Appellant's trial was set to begin, Gaskins claims to have filed a motion for a continuance, which, according to Gaskins, the trial court denied. The case proceeded to trial as scheduled on October 3, 1991, and the jury returned a guilty verdict against Appellant late in the afternoon of October 9,

1991. Appellant's penalty phase hearing began first thing the following morning, for which Gaskins readily admits he was unprepared. In his affidavit/declaration attached to Appellant's PCRA petition, Gaskins states point-blank that he "did not have time to investigate the penalty phase." Affidavit/Declaration of Oscar Gaskins at 2. Nor was Gaskins able to rely on previous preparation done by Appellant's prior trial counsel as Ciccone states in his own affidavit/declaration that "at the time that I turned the case over to Gaskins, I had not investigated or prepared a penalty phase defense." Affidavit/Declaration of Thomas Ciccone at 1.

Appellant now claims that had trial counsel conducted any kind of investigation for the penalty phase, he would have discovered valuable evidence of mitigation, including evidence of Appellant's severe mental health impairments and dysfunctional family life. In support of his claim, Appellant points to, among other things, a mental health evaluation conducted three years before, an affidavit from a forensic psychiatrist outlining evidence of Appellant's mental impairment, and evidence of Appellant's dysfunctional family history, including the fact that both of Appellant's parents abused alcohol, that Appellant's father beat his mother, and that Appellant made suicide threats as a child. Given counsel's clear admission that he did not even attempt to investigate whether this or any other potential evidence of mitigation existed, and given that such evidence did in fact exist, it is clear, at least to me, that Appellant has demonstrated on the record before us that his ineffectiveness claim has arguable merit. *See Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 787–88 (2004) (appellant's claim that trial counsel was ineffective for failing to present certain mitigating evidence, including evidence that appellant suffered an abusive childhood and was abandoned by his drug-addicted mother, had arguable merit where appellant established that such evidence was discoverable and could have been forwarded in mitigation had counsel undertaken even a minimal investigation).

Appellant has also shown, in my mind, that counsel had no reasonable basis for failing to investigate and present this

4

mitigating evidence. In finding otherwise, the PCRA court below first noted that Gaskins actually presented nine witnesses at Appellant's penalty phase hearing, who basically testified that Appellant was well-liked, respectful, a good student, and a good father. One of the nine witnesses, Appellant's mother, also testified that Appellant had been left by his father at a young age and grew up in a bad neighborhood. The PCRA court found, in effect, that the presentation of this testimony constituted a reasonable strategy on the part of Gaskins. However, as the trial investigator hired by Gaskins states in his own affidavit/declaration:

> I did not conduct a penalty phase investigation. Mr. Gaskins and I got a list of names from [Appellant] of people who could "cry and beg" the jury not to sentence [Appellant] to death. I never had time to interview any of these witnesses. I was unable to collect relevant records. Mr. Gaskins was forced to ... put defense witnesses on the stand, in both the guilt/innocence and penalty phase, cold. He had no idea what they would say.

Affidavit/Declaration of Karim Shabazz at 3.[1] Given these circumstances, I simply do not see how the PCRA court could find that counsel's strategy was reasonable, when the evidence shows that such a strategy amounted to little more than blindly throwing witnesses up on the stand with the mere hope that they would offer some sort of testimony that would resonate with the jury. In any event, in light of counsel's admission that he conducted no investigation whatsoever for the penalty phase, it is clear to me that counsel's decision not to present the mitigating factors Appellant cites to here was

---

1. *See also* Affidavit/Declaration of Joan Gibson at 4 ("[A]t no time before trial did any attorney for [Appellant] ask me any questions about [Appellant's] background. Mr. Gaskins didn't tell me until right before the penalty phase that he might call me to testify, and never prepared me for my testimony."); Affidavit/Declaration of Leora Johnson at 4 (stating that she had no idea what she was going to be asked when she took the stand at the penalty phase because no one had talked to her about her testimony and that no one ever asked her about Appellant's background); Affidavit/Declaration of Niema Williamson at 4 (stating that before testifying at the penalty phase, "one of the defense lawyers told me that I should get up on the stand and plead for [Appellant's] life. Nothing else was said to me about what I was doing there.").

not one based upon a reasonable strategy. *See Wiggins v. Smith*, 539 U.S. 510, 527–28, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (reasonableness of strategy depends upon reasonableness of investigation); *Malloy*, 856 A.2d at 788 (counsel's failure to present mitigating evidence regarding appellant's background was not based on reasonable strategy where record showed that counsel did not even conduct cursory review of appellant's background and failure to present evidence was not caused by appellant's or appellant's family's failure to cooperate in supplying information).

Finally, I believe that Appellant has also shown that he was prejudiced by counsel's admitted failure to conduct any investigation at all for the penalty phase. Such a failure ultimately resulted in the jury being deprived of important evidence in deciding whether or not certain mitigating factors were applicable or had been established. Instead, the only non-record-based mitigating evidence presented by counsel was a series of witnesses who, although counsel had "no idea what they would say," were called upon to "cry and beg" for Appellant's life.[2] Under these circumstances, and where the jury ultimately found and weighed one mitigating circumstance against the three aggravating circumstances it also found, I agree with Appellant that had counsel done any investigation for the penalty phase and presented the mitigating evidence that such investigation would have uncovered, there is a reasonable probability that the ultimate outcome of the jury's penalty phase deliberations would have been different.[3]

2. Counsel also asserted that Appellant's age and his lack of a significant criminal history were mitigators. The jury found the existence of the latter.

3. The PCRA court below found that Appellant was not prejudiced by counsel's admitted failure to conduct any investigation for the penalty phase because "it is pure conjecture on [Appellant's] part that the sentencing jury would have found [Appellant's] intoxication, substance abuse or background a mitigating factor. Further, even if the jury did find that these were mitigating factors, it is pure speculation that this would have outweighed the three aggravating factors found buy the jury for each murder count." PCRA Ct. Op. at 16–17. Of course, there will always be some degree of speculation implicated by allegations that counsel failed to present relevant evidence of mitigation, as courts cannot say with absolute certainly what a jury would have done had it

In the end, I believe that Appellant has aptly demonstrated that trial counsel was ineffective for failing to conduct any investigation for his penalty phase hearing. Indeed, in support of his claim, Appellant has furnished this Court, as he did the PCRA court below, with what really amounts to a "smoking gun," a signed statement from his attorney all but conceding that he was ineffective by failing to conduct any investigation or meaningful preparation whatsoever for Appellant's penalty phase hearing. Appellant has also provided this Court, again as he did the PCRA court below, with evidence of mitigation that was discoverable and could have been presented at his penalty phase hearing had his counsel undertaken even a minimal investigation. I simply fail to see what additional support for his claim the majority expects Appellant to produce at an evidentiary hearing or indeed, what other evidence Appellant *needs* to produce above and beyond what he has already provided to the Court.

While I would not remand for an evidentiary hearing, I do recognize that Appellant's underlying claim of trial counsel's ineffectiveness is not the viable claim before the Court. Instead, as this Court explained in *McGill*, in collateral cases involving layered claims of ineffectiveness, the only viable ineffectiveness claim is that related to the most recent counsel, usually, as in this case, appellate counsel. Thus, *McGill* made clear that a petitioner's ineffectiveness claim must focus on appellate counsel's representation and to that end, he must plead appellate counsel's ineffectiveness in his PCRA petition, which Appellant has done here, *and* present argument in his brief on all three prongs of the ineffectiveness test as it relates to appellate counsel's deficient representation. *McGill*, 832

possessed additional evidence of mitigation during its deliberations. In recognition of this, this Court has stated that to establish prejudice in this context an appellant must only show "the *reasonable probability* that, absent counsel's failure to present the mitigating evidence [in question], he would have been able to prove at least one mitigating circumstance by a preponderance of the evidence and that at least one jury member would have concluded that the mitigating circumstance(s) outweighed the aggravating circumstance(s)." *Commonwealth v. Ford*, 570 Pa. 378, 809 A.2d 325, 332 (2002) (emphasis added), *cert. denied*, 540 U.S. 1150, 124 S.Ct. 1144, 157 L.Ed.2d 1044 (2004). As indicated above, Appellant has, in my view, met this burden here.

A.2d at 1021–1022. Here, Appellant has, in my view, established the arguable merit of his claim that appellate counsel was ineffective by demonstrating that trial counsel was indeed ineffective for his failure to investigate and present the evidence of mitigation cited by Appellant. *See id.* at 1022–23 (explaining that arguable merit prong of claim relating to appellate counsel ineffectiveness can only be established by showing that trial counsel rendered ineffective assistance). However, in presenting his argument regarding appellate counsel's ineffectiveness, Appellant has failed to develop the second and third prongs of the ineffectiveness test as it relates to appellate counsel. Significantly, such an omission is not fatal to Appellant's claim as *McGill* recognized that in light of the previous confusion regarding the mechanics of preserving layered ineffectiveness claims, a remand may be necessary to give a petitioner the opportunity to properly develop his claims of appellate counsel's ineffectiveness. *See id.* at 1024. Indeed, such is the case here, and thus, consistent with *McGill,* I would remand the matter solely to give Appellant the opportunity to further develop his assertion that appellate counsel was ineffective for failing to raise the claim that trial counsel was ineffective for failing to investigate and present the evidence of mitigation on which Appellant relies.[4]

Justice EAKIN, dissenting.

I cannot support the majority's remand which would consider whether appellant's trial counsel was ineffective for failing to investigate and present at the penalty phase "mitigating evidence" of appellant's intoxication at the time of the murders, his history of drug and alcohol abuse, and his dysfunctional family history. Counsel in this case offered a viable approach, seeking to cast the most favorable light on his client for the jury—an effort which included nine witnesses who

---

4. Although Appellant has attached an affidavit form his appellate counsel to his brief to this Court, he did not submit that affidavit to the PCRA court and therefore, it may not be considered here. *See Commonwealth v. Crawley,* 541 Pa. 408, 663 A.2d 676, 681 n. 9 (1995) (document attached to appellant's brief could not be considered by this Court because it was not part of official record).

testified about the positive and human aspects of appellant's life. I believe, as the PCRA court found, counsel's chosen path was a reasonable strategy, highlighting the beneficial aspects and accomplishments of appellant's life rather than belaboring the factors that purportedly made him a killer, and would affirm the order below.

The jury found the mitigation presented did not outweigh the aggravating factors in this double homicide. The argument that inevitably follows such a result is that choosing a different course at the penalty phase could not have led to a worse result; therefore, it should have been chosen in the first place. This is flawed logic, for it necessarily presumes that a successful strategy is available in the first place; such is not always the case. Reasonableness of a strategy is not measured by its success any more than is the reasonableness of a search. We cannot review in hindsight and say the result determines whether the means chosen were reasonable; we review the means chosen and determine whether they reflect a valid strategy.

Hindsight often reveals inadequacies and missteps, but this Court reviews whether counsel's chosen course was reasonably designed to serve the client's interest. *See Commonwealth v. Meadows*, 567 Pa. 344, 787 A.2d 312, 320–21 (2001). As is often the case, trial counsel had two competing types of potential "mitigation" evidence. The focus could center on how appellant had accomplished things despite his hard background, and hence had potential value to society; this would suggest the murder was an aberration, a contrast to his positive side. Alternatively, he could have stressed those factors which offer an explanation of why he turned out to be a murderer. These suggest the crime was almost inevitable; they could also suggest that he will always be a dangerous product of those factors.

Counsel admittedly did not investigate or present the latter, but he did present the former, in detail. Counsel called nine witnesses to testify to appellant's good character: his mother, grandmother, grandfather, uncle, two aunts, a long-time friend, the mother of his daughter, and a family friend.

Counsel admitted he did not know exactly what each witness would testify to, but it is clear he sought to and succeeded in making a contrast to the damaging testimony of appellant's actions surrounding the murders. This was done with testimony showing appellant manifested decency and goodness in his life, and hence deserved to be spared from the death penalty.

For example, appellant's mother testified her son was a good student, senior class president, and went to college. N.T. Trial, 10/10/91, at 7–9. Appellant's mother also offered the jury some insight into appellant's troubled youth, such as his upbringing in a rough, drug-infested neighborhood, and that his father left when he was 21 months old. *Id.,* at 11–12. This testimony was elicited to show how appellant overcame these setbacks and became a respected member of the community, rather than characterizing him as a corrupted individual. This chosen path painted appellant in the most positive light, instead of trying to explain why he was a bad person now seeking gratuitous mercy. This was a viable approach, particularly since appellant steadfastly maintained his innocence throughout trial; it expanded on appellant's lack of prior criminal involvement. *See Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 734–35 (1998) (counsel not ineffective for continuing to paint consistent picture).

It is not ineffective representation for counsel, having chosen the first path, to keep from the jury the prejudicial evidence now said to be mitigation: appellant's intoxication, historical addiction, and unstable mental state. Ironically, if the prosecution sought to introduce these same factors, appellant would cry foul and claim they were being offered merely to smear his character and prejudice the jury *against* him. They are traits of bad character. Now, through some alchemy of logic, they are said to be mitigators.

There will be cases where addiction, intoxication, and mental instability may mitigate a murder, but it simply is not an automatic conclusion. It cannot be the law that failure to seek out and present evidence of bad character is deemed ineffectiveness—how can we condemn counsel for not telling the jury

"my client is not just a killer, he's a mentally unstable drug addict too, and probably will be forever—but have mercy on him anyhow." A life of dysfunction may explain a murderer's disposition to commit the crime, but it may also make the jurors conclude that his future is as dangerous as his past and there is every reason to fear and worry about him.

In *Commonwealth v. Malloy,* 579 Pa. 425, 856 A.2d 767 (2004), this Court recently faulted counsel for making no effort at mitigation, a contrast to the present case that is significant. This Court commented at length on the criterion warranting a death penalty phase remand for counsel's inadequate performance:

> Although we recognize that the unpursued evidence in this case is not the strongest, we further note that trial counsel's presentation at the penalty phase included no affirmative evidence *at all,* but only a brief argument and a stipulation. Such a performance, which was not motivated by any strategic decision, left the jury with a dry assessment of appellant's individual circumstances. In short, it is not just the failure to present evidence of appellant's background which concerns us, but the fact that the failure occurred in a case where there was little effort to personalize appellant for the jury.

*Id.,* at 789 (emphasis in original).

Such is not the case here. Counsel tried extensively to personalize appellant and not leave the jury with only those negative aspects of his life extrapolated during the trial. While it ultimately proved insufficient to overcome the aggravating factors, I would not overturn the trial court's finding, nor do I characterize as ineffective, counsel's failure to present appellant's condemnable and prejudicial character traits simply because they are labeled "mitigation" by present counsel. Therefore, I respectfully dissent.

Justice CASTILLE and Justice NEWMAN join this dissenting statement.