J-S14026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHARYEE MCCULLOUGH, | |
| Appellant | No. 1707 EDA 2014 |

Appeal from the Judgment of Sentence of April 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009669-2010

BEFORE:  DONOHUE, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 06, 2015**

Appellant, Kharyee McCullough, appeals from the judgment of sentence entered on April 11, 2014, following his bench trial convictions for third-degree murder, conspiracy to commit homicide, possession of an instrument of crime (PIC), and two firearm violations.[1]  Upon review, we affirm.

The trial court set forth the facts of this case as follows:

On June 1, 2010, thirty-four (34) year-old Raymond Berry (decedent) was shot by [Appellant] and an unknown accomplice on the 3000 block of West Dakota Street in Philadelphia.  The decedent died from multiple gunshot wounds.  Video surveillance obtained by police from cameras at a nearby business captured the crime.  In a formal statement, [Appellant] identified himself as one of

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903, 907, 6106, and 6108, respectively.

the shooters in the video. He declined to provide the identity of his accomplice.

In the video, the decedent is observed running. [Appellant] and his accomplice chase the decedent on bicycles in the same direction. The two men separate. Gunshot flashes are observed. Consistent with trace blood evidence at the scene, the unarmed decedent falls by a nearby vehicle, rises to his feet, and limps as he continues to run for his life. [Appellant] continues to shoot at the decedent before turning his bike around. Then, off camera, [Appellant's] accomplice approaches from the other end of the street to deliver the fatal shots. [Appellant] admitted to hearing gunshots as he rode away from the crime scene.

During collection of ballistic and trace blood evidence, six (6) .380 caliber semi-automatic fired cartridge casings [] were recovered at the scene of the shooting, all stamped with the same manufacturer['s name]. [Appellant] stated he was shooting a .380 [caliber firearm], but that he only had four shots in his gun. The medical examiner, Dr. Aaron Rosen, observed four gunshot wounds to the body, two to the head and neck area, one to the back and one to the right arm. The wound to the right forearm was the first wound that [the decedent] received. Based on the evidence presented at trial, the decedent would not have died from the shot to the right arm that was fired by [Appellant]. Officer Brian Stark testified that the gunpowder was visible around each of the bullet holes.

Gamal Emira, criminalist for the Philadelphia Police Department, testified that the discoloration around the hole in the back of decedent's t-shirt and the presence of high particles of gunshot residue indicate the gun was fired in close proximity [to] or touching the clothing at the time it was fired. Detective Edward Nelson and Dr. Rosen testified that the gunshot wound to the [decedent's] forehead was consistent with a contact wound, evident from the tearing of decedent's skin. [Appellant's] accomplice delivered the coup de grâce[, a] contact gunshot wound to his forehead [and a] contact gunshot wound to his back.

Trial Court Opinion, 9/23/2014, at 2-3 (record citations, quotations, and original brackets omitted).

The matter proceeded as follows:

On June 5, 2013, [Appellant] was found guilty [of the aforementioned crimes, following a bench trial]. On April 11, 2014, [Appellant] was sentenced to twenty (20) to forty (40) years for the third-degree murder conviction; five (5) to ten (10) years for the criminal conspiracy to commit homicide conviction, to run consecutively; no further penalty [for the two firearm convictions]; and five (5) years [of] probation for the PIC conviction, to run consecutively. [Appellant] received an aggregate sentence of twenty-five (25) to fifty (50) years [of] incarceration plus five (5) years [of] reporting probation. On May 28, 2014, [Appellant filed] a notice of appeal[]. On August 25, 2014, [Appellant's] counsel filed a statement of [errors] complained of on [appeal], pursuant to an order of the court directing counsel to file a [Pa.R.A.P.(b)] statement. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 23, 2014.]

*Id.* (superfluous capitalization omitted).

On appeal, Appellant presents the following issues for our review:

I. Is [Appellant] entitled to an arrest of judgment on the charge of [t]hird[-d]egree murder and [c]riminal [c]onspiracy where the evidence is insufficient to sustain the verdict?

II. Is [Appellant] entitled to a new trial on the charges of [third-degree murder] and [c]riminal [c]onspiracy where the verdict is not supported by the greater weight of the evidence?

Appellant's Brief at 3.

In his first issue presented, Appellant argues there was insufficient evidence to support his convictions for third-degree murder and conspiracy.

He claims "[t]he Commonwealth has not sustained its burden because [Appellant] quite obviously did not shoot and kill the victim and [Appellant] was not demonstrated, beyond a reasonable doubt, to be a conspirator of the shooter/killer." *Id.* at 7. Appellant assails the trial court's legal interpretation arguing, "[t]he [trial] [c]ourt seems to think that because the two men rode down the street in close proximity to one another, that they had to be conspirators." *Id.* at 8. In sum, he contends:

> Here, [Appellant] and the other young man rode in the same direction as the victim and apparently both fired shots. However, there is nothing in the record which would indicate that there was an agreement to do so. They simply did the same thing at the same time. They might even have had similar reasons. However, the case law does not hold that that makes a conspiracy.
>
> Even if there was a conspiracy, there was no conspiracy to kill. [Appellant] had plenty of opportunity to evince a desire to kill. He did not follow up with any of those opportunities. Even the [t]rial [j]udge noted that. However, it was the other person involved that did have an intent to kill and demonstrated that intent to kill by shooting the victim in the head at very close range. Thus, and where [Appellant] may have had an intent to harm or scare but where the other individual had the intent to kill, there simply was no agreement[] with regard to their intent and hence, without that agreement there was no criminal conspiracy. In that [Appellant] did not fire a kill shot, he could only be guilty of [m]urder in the [t]hird [d]egree if he was a criminal conspirator here and that simply was not the case. Accordingly, an arrest of judgment must be awarded to [Appellant] on the charge of [m]urder in the [t]hird [d]egree and [c]riminal [c]onspiracy.

*Id.* at 9-10 (footnote omitted).

Our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014).

Regarding third-degree murder, our Supreme Court has determined:

[T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the [factfinder] need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

***Commonwealth v. Meadows***, 787 A.2d 312, 317 (Pa. 2001) (citation omitted). "Malice may be found to exist in an unintentional homicide where

a defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Fisher*, 80 A.3d 1186, 1197 (Pa. 2013) (citation omitted).

Regarding criminal conspiracy, our Supreme Court has concluded:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a co-conspirator) to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.
>
> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (citations and quotations omitted).

Upon review of the record, we conclude the Commonwealth set forth sufficient evidence to support Appellant's challenged convictions. The Commonwealth presented video surveillance from an auto repair store near the scene of the crime. N.T., 6/4/2013, at 22. The trial court watched a compilation video of three camera angles that captured portions of the crime. *Id.* at 79-81. The video depicts the victim running down the street with two men on bicycles following him in the same direction. *Id.* at 81-82. The victim falls and gets back up and continues running. *Id.* at 84. Gunshot flashes are seen on the video. *Id.* at 84. The men on bicycles flee the scene in opposite directions. *Id.* Following the crime, Appellant identified himself as one of the men on a bicycle as seen in the video. N.T., 6/5/2013, at 12, 30. More specifically, Appellant "identified himself as the male firing the gun that you see with the muzzle flash." N.T., 6/4/2013, at 170-171. Appellant also gave a statement to police wherein he admitted to shooting at the victim, at two different points during the incident, with a .380 caliber handgun that was loaded with four bullets. *Id.* at 18-21. Police recovered six .380 caliber semi-automatic fired cartridge casings from the scene. N.T., 6/4/2013, at 6. Upon autopsy, bullets were removed from the victim's arm, mouth, back, and jaw. N.T., 6/5/2013, at 104-113. The ballistics expert opined that two separate guns were used in the shooting. *Id.* at 115.

Here, in viewing the evidence in the light most favorable to the Commonwealth as our standard requires, the evidence was sufficient to

show, circumstantially, that Appellant and another man acted in concert with each other as co-conspirators. Both men were on bicycles, riding near each other, and chasing the victim who was on foot. The ballistics evidence showed that both men fired shots. Appellant admitted he was one of the shooters. We reject Appellant's suggestion that he and his conspirator happened upon the same victim and independently decided to shoot at him at the same time. Accordingly, it matters not which person shot the fatal blow, because Appellant is liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act. *See Murphy*. To support a conviction for third-degree murder, the Commonwealth was required prove the murder was committed with malice, but did not need not prove, nor even address, the presence or absence of a specific intent to kill. *See Meadows*. Instead, the Commonwealth was required to prove a conscious disregard of an unjustified and extremely high risk that actions might cause death or serious bodily harm. *See Fisher*. Here, the Commonwealth produced evidence that the victim was shot multiple times while fleeing and the shooting continued even after the victim fell to the ground. Such actions clearly showed a conscious disregard of the high risk that death or serious bodily injury would occur. Thus, we discern no abuse of discretion in finding Appellant guilty of third-degree murder based upon co-conspirator liability. Appellant's first issue fails.

Next, Appellant argues that his convictions were against the weight of the evidence. Appellant's Brief at 11-12. In advancing this argument,

Appellant again asserts that the trial court erred by determining that there was a conspiracy. *Id.*

Our standard of review is as follows:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the factfinder's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012) (citation omitted).

Based upon the facts as set forth above, the verdict does not shock one's sense of justice. Appellant and his co-conspirator each fired multiple shots at the victim which ultimately resulted in his death. Hence, we discern no palpable abuse of discretion by the trial court in denying Appellant relief on his weight of the evidence claim. Accordingly, Appellant's second claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/6/2015</u>