J-S16017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAWRENCE JEFFRIES | |
| Appellant | No. 1318 EDA 2015 |

Appeal from the Judgment of Sentence February 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003347-2013
CP-51-CR-0003348-2013

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 23, 2016**

Lawrence Jeffries appeals from the judgment of sentence imposed on February 18, 2015, in the Court of Common Pleas of Philadelphia County, made final by the denial of post-sentence motions on March 31, 2015.  On December 16, 2014, at the conclusion of a bench trial, the court convicted Jeffries of third-degree murder, three counts of aggravated assault, four counts of recklessly endangering another person ("REAP"), and possession of an instrument of crime ("PIC").[1]  The court sentenced Jeffries to an aggregate term of 27 to 50 years' imprisonment.  On appeal, Jeffries raises sufficiency and weight claims.  For the reasons below, we affirm.

---

[1]  18 Pa.C.S. §§ 2502(c), 2702(a), 2705, and 907(a), respectively.

The trial court set forth the factual history as follows:

On January 1, 2013, at or around 3:00 a.m., [Jeffries], along with Miliak Coleman, Kevin Savage, and James Gatling, arrived at a New Year's Eve party held inside a small residential apartment. Soon after [Jeffries] arrived, [Jeffries] and his friends confronted several other males, including David Ford, Stephen Johnson, Kyle Morris, Kashief Butler, and Amir Johnson, who were already present at the party. The initial confrontation began over a gesture to Amir's girlfriend. The verbal confrontation became heated when one of [Jeffries'] friends stepped on the boot of one of the individuals in the opposing group.

During the verbal confrontation, [Jeffries] lifted his fleece and exposed a firearm. David Ford testified that before [Jeffries] lifted his shirt, no other weapons had been displayed at the party. The exposure of [Jeffries'] gun escalated the confrontation further – it was at that point one of [Jeffries'] friends threw a punch and a physical altercation began between the two groups of males. Not long after the physical altercation ensued, [Jeffries] removed himself from the altercation, stepped back into a hallway within the apartment, pulled out a semi-automatic handgun, chambered a round, and fired five shots at several males. Ford testified that at the time of the shooting, [Jeffries] was not actively engaged in any fighting; nor had he been threatened in any way.

After Ashley Lloyd, a party attendee, heard the two groups of males arguing, she and a friend fled from the fight and went into a separate room inside the apartment. Soon thereafter, Lloyd heard the gunfire. People in the same room with Lloyd hid in the closet and under the bed. With nowhere left to hide, Lloyd kicked out a window screen and jumped from the room's second-story window onto the sidewalk. Lloyd suffered fractures in both legs from the fall, and was confined to a wheelchair for three months.

Each of the five discharged bullets from [Jeffries'] gun struck individuals inside the apartment. All three victims of the gunfire were in the group of males that opposed [Jeffries] and his friends during the altercation.

Stephen Johnson was shot in the upper chest, and in the right arm. The bullet to Johnson's chest penetrated his left and right lungs as well as his aorta. Johnson died about an hour after the shooting at Temple University Hospital from the gunshot wound to his chest. Dr. Gary L. Collins, the Deputy Chief Medical Examiner, concluded that Johnson was not shot at close-range.

Kyle Morris was shot in the torso, the arm, the foot, and once in the back, the last of which was characterized as a graze wound. Morris testified that he stood roughly ten to fifteen feet from [Jeffries] and witnessed [Jeffries] firing at him.

[Jeffries] also shot Kashief Butler once in the right foot. Butler testified that at no point during the physical altercation was [Jeffries] actively engaged in the fighting. Butler witnessed [Jeffries] pull a gun from his waist, back away from the altercation, lift the gun, and fire.

Following the shooting, [Jeffries] ran out of the apartment, jumped into his car, and called 9-1-1. After calling 9-1-1, [Jeffries] drove around the block, parked, placed the firearm on the roof of the car, and waited for police. When police arrived, [Jeffries] confessed to being the shooter. The police recovered the gun from the roof of [Jeffries]'s car.

Later that morning, [Jeffries] waived his **Miranda** [**Miranda v. Arizona**, 384 U.S. 436 (1966)] rights and gave a signed, voluntary statement to police detectives. In his statement he confessed to shooting Stephen Johnson, Kyle Morris, and Kashief Butler and that he owned a registered .40 caliber firearm.[1] He also alleged that he acted in self-defense when he shot two of the victims, claiming that he chambered a round and fired at one victim because the victim lunged at him. He further claimed that he fired at another victim after he saw the victim approaching him. He admitted that he was not physically touched during the altercation; nor was he engaged in fighting when he discharged his firearm.

[1] [Jeffries] testified that he purchased the firearm as a Christmas present to himself eight days before the shooting.

- 3 -

At trial, [Jeffries] testified that, with the benefit of hindsight, he now believes he may have overacted by introducing the gun into the altercation. [Jeffries] claimed that he only fired the gun to cause "any type of delayed reaction for the melee" so he could escape the apartment.

Trial Court Opinion, 6/1/2015, at 2-4 (record citations omitted).

On January 2, 2013, Jeffries was arrested and charged with murder, three counts of aggravated assault, four counts of REAP, and PIC. At a bench trial on November 3, 2014, the court convicted him of third-degree murder, three counts of aggravated assault, four counts of REAP, and PIC. Sentencing was deferred until February 18, 2015, for the completion of pre-sentence and mental health reports. On that date, the court sentenced Jeffries to concurrent terms of 15 to 30 years' imprisonment for third-degree murder and five to ten years' incarceration for one count of aggravated assault; consecutive terms of five to ten years' imprisonment for the two remaining counts of aggravated assault, and concurrent terms of one to two years' imprisonment for PIC and REAP.

On February 23, 2015, Jeffries filed a post-sentence motion, raising a weight of the evidence claim with regard to his third-degree murder conviction. Four days later, he filed a motion for reconsideration of

sentence. The court held a hearing on his motions on March 31, 2015. This appeal followed.[2]

Jeffries first contends that the evidence was insufficient to support his third-degree murder conviction because he acted in self-defense and did not possess the requisite malice to commit the crime.[3] Specifically, Jeffries asserts, "[He] did not provoke the use of force" and he "acted so as to defend himself and also in the protection of others. [His] friends were being assaulted on an equal basis with [him] and perhaps even more so[.]" Jeffries' Brief at 13. He states:

> Once hostilities broke out, the lights went out and [Jeffries] and his friends were clearly about to be overwhelmed by the 'other side' which had many more men on its side and whose men were

---

[2] On May 4, 2015, the trial court ordered Jeffries to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Jeffries filed a concise statement on May 15, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 1, 2015.

[3] In his brief, Jeffries raises the sufficiency argument as to all of his convictions. **See** Jeffries' Brief at 3, 11. However, the trial court found he waived the argument with respect to his REAP and PIC convictions because they were insufficiently addressed in his concise statement. **See** Trial Court Opinion, 6/1/2015, at 5 n.2; **see also** Pa.R.A.P. 1925(b)(4)(ii),(vii) **and Commonwealth v. Dowling**, 778 A.2d 683 (Pa. Super. 2001).

Furthermore, Jeffries also presents no argument in his brief as to his aggravated assault conviction. Accordingly, we find he has waived the argument for failure to develop a sufficient claim. **See Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (concluding the appellant's sufficiency claim was waived where his argument was underdeveloped because he did not "set forth the elements of the crimes he was convicted" or "which specific elements were not met."), *appeal denied*, 3 A.3d 670 (Pa. 2010).

larger, more physically capable and older th[a]n the youthful group who had arrived with [Jeffries]. Thus, [Jeffries] reasonably believed that he and his friends were in imminent danger of severe bodily injury or perhaps death.

*Id.* He further argues:

[Jeffries] and his friends were so vastly outnumbered by a group of people who considered themselves to be a "team" and from the surrounding facts, it can be taken and/or presumed that the "team" was about to do harm to [Jeffries] and his small group of friends. Counsel [for Jeffries] believes that the issue is not whether [Jeffries] ill perceived that he was in danger but rather whether [Jeffries] could have resorted to deadly force. Thus, counsel [for Jeffries] believes that [Jeffries] met the subjective test of believing he was in danger; the object of the nature of the test is whether a reasonable person would have believed that he should have resorted to deadly force. Maybe people could disagree on that. However, and pursuant to the law, the Commonwealth did not prove beyond a reasonable doubt that [Jeffries] failed to act in self-defense.

The law would be unduly harsh if it required [Jeffries] to wait until such time as up to eight members of "the team" had beaten the starch out of himself and his friends and possibly caused life altering injuries or perhaps even death. People have been known to have died from receiving one punch. [Jeffries'] actions reflected that he did not wish to wait and see how bad the beating was going to become. [Jeffries] thus took preemptive action.

*Id.* at 15-16. Moreover, Jeffries claims the evidence did not establish that he acted with malice, which is necessary to sustain his third-degree murder conviction. *Id.* at 16-17. He states he "cannot be said to have had the time to think about what was going on and [he] simply reacted to the 'facts on

- 6 -

the ground.' He unreasonably believed that he could act in protection of himself and others." *Id.* at 17.[4]

We begin with our well-settled standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Regarding third degree murder … the statute simply states, "All other kinds of murder shall be murder of the third degree." [18 Pa.C.S.] § 2502(c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, §

---

[4] Jeffries also states the following actions corroborate the assertion that he did not act with malice: (1) he lawfully possessed the weapon; (2) he did not personally get into a fight; (3) his involvement began when he stood up for his "rather smallish" friend who was having a "hard time confronting the eight members of the team[;]" (4) he did not flee; and (5) he confessed to the police that he was the shooter. *Id.* at 17.

302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." *Id.*, § 302(c) (emphasis added).

Case law has further defined the elements of third degree murder, holding:

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but … [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (Pa. 2005) (alteration in original) (internal citation, quotation, and emphasis omitted); *see also Commonwealth v. Drum*, 58 Pa. 9, 15 (1868) (defining malice as quoted above). This Court has further noted:

> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Commonwealth v. Meadows*, 567 Pa. 344, 787 A.2d 312, 317 (Pa. 2001) (quoting *Commonwealth v. Young*, 748 A.2d 166, 174-75, 561 Pa. 34 (Pa. 1999)).

*Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013), *cert. denied*, 134 S.Ct. 2314 (U.S. 2014).

With respect to the defense of self-defense, we are guided by the following principles.  Section 505 sets forth the elements of self-defense, in relevant part, as follows:

§ 505.  **Use of force in self-protection**

(a) Use of force justifiable for protection of the person.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

(b) **Limitations on justifying necessity for use of force.**

…

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

(iii) the person against whom the force is used displays or otherwise uses:

(A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms); or

> (B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. § 505(a), (b)(2.3).

> "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." ***Commonwealth v. Bullock***, 2008 PA Super 83, 948 A.2d 818, 824 (Pa. Super. 2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. ***Commonwealth v. McClendon***, 2005 PA Super 164, 874 A.2d 1223, 1230 (Pa. Super. 2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. ***Commonwealth v. Burns***, 2000 PA Super 397, 765 A.2d 1144, 1149 (Pa. Super. 2000).

***Commonwealth v. Ventura***, 975 A.2d 1128, 1143 (Pa. Super. 2009),

*appeal denied*, 987 A.2d 161 (Pa. 2009).

> To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant used more force than reasonably necessary to protect against death or serious bodily injury.

***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014) (internal

citations and emphasis omitted).

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they

appeared to the defendant, a consideration that involves an objective analysis.

*Id.* at 787, *quoting* **Commonwealth v. Mouzon**, 53 A.3d 738, 752 (Pa. 2012).

Additionally, we note the "defense of others" is substantially similar to self-defense:

> **(a)  General rule. —** The use of force upon or toward the person of another is justifiable to protect a third person when:
>
> > (1)   the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
> >
> > (2)  under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
> >
> > (3)  the actor believes that his intervention is necessary for the protection of such other person.
>
> **(b)  Exception. —** Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S. § 506 (some bold and italics removed).  Lastly, it bears mentioning:

> [w]hen the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the [fact-finder]'s disbelief of the defendant's testimony:
>
> > The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact.  The trial court's statement that it did not believe [a]ppellant's

- 11 -

> testimony is no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim.
>
> If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness. The complainant can serve as a witness to the incident to refute a self-defense claim.

*Smith*, 97 A.3d at 788 (internal quotation marks and citations omitted).

Here, the trial court correctly found the following:

> In the case at bar, there is no dispute that [Jeffries] fired his weapon inside the small apartment the night of the shooting. Eyewitness testimony, including that of [Jeffries], sufficiently established that [he] pulled out his firearm and discharged it at several unarmed individuals. [Jeffries'] malice can be inferred from his use of a deadly weapon upon a victim's vital body part. Here, [Jeffries] shot the decedent twice – with one bullet penetrating both his lungs as well as his aorta – resulting in the decedent's death. His actions plainly establish he killed the decedent, and that he did so in a manner exhibiting an extreme indifference to the value of human life and an unjustified disregard of the likelihood of death.
>
> Further, [Jeffries] testified at trial that he only fired his gun to cause "any type of delayed reaction for the melee" in order to seek escape. Yet, he did not fire a single shot; nor did he fire his gun at the floor or the ceiling. Instead, [Jeffries] fired multiple shots at several unarmed people, with each bullet striking an individual from the group that opposed him and his friends in the altercation. The precision of [Jeffries'] shooting shows that he did not fire his gun indiscriminately; nor did he fire to cause a delay in the fighting to seek escape. Rather, his targeted shooting shows that he fired with the intent to strike particular individuals, including the decedent. The evidence is therefore more than sufficient to support that [Jeffries] acted with the requisite malice for Third-Degree Murder.
>
> …
>
> [Jeffries'] self-defense claim is unsupportable. The Commonwealth sustained its burden by disproving this claim by

showing that [Jeffries] violated his duty to retreat. Pennsylvania law states, in part, that an actor can only stand his or her ground if the "person against whom the force is used displays or otherwise uses … a firearm or replica of a firearm … [or] any other weapon readily or apparently capable of lethal use." 18 Pa.C.S.A. § 505(a)(2.3). In the instant matter, none of the victims, or the other occupants in the apartment, possessed or brandished any type of weapon before or at the time of the shooting. [Jeffries] therefore had a duty to retreat before using deadly force. 18 Pa.C.S.A. § 505(a)(2)(ii).

[Jeffries] was not actively engaged in fighting before – or at the time – he fired his weapon. [Jeffries] removed himself from the altercation, stepped into a hallway, took a moment to chamber a round, and fired his weapon. [Jeffries] could have, at that point, avoided the danger and safely retreated by way of several avenues. The hallway [Jeffries] stepped into led to a bathroom and a bedroom. [Jeffries] also had access to a set of stairs, adjacent to the hallway, which exited the apartment.

Moreover, [Jeffries] was not free from fault in provoking the difficulty that culminated in the slaying. Prior to the shooting, [Jeffries] provoked and escalated the situation by exposing his firearm and introducing it into the verbal confrontation – it was at that point the verbal confrontation turned into physical.

There was no evidence that [Jeffries] reasonably or unreasonably believed he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victims to prevent such harm. David Ford testified that at the time of the shooting, [Jeffries] was not threatened in any way. Kyle Morris testified that he stood roughly ten to fifteen feet from [Jeffries] when [Jeffries] fired his weapon at him. This testimony was corroborated by the Deputy Chief Medical Examiner who concluded that the decedent was also not shot at close-range. In addition, at no point during the physical altercation was [Jeffries] actively engaged in the fighting.

Finally, this Court finds [Jeffries'] testimony on the self-defense matter not credible. [Jeffries] offered incongruous statements on the reasons why he discharged his firearm. He first alleged to police that he acted in self-defense when he shot

- 13 -

two of the victims. He claimed that he fired at one victim because the victim lunged at him; and that he fired at another victim after he saw the victim approaching him. Yet, at trial he claimed that he did not intend to shoot the victims out of any fear that they may harm him; rather, he only discharged his firearm to cause a delay in the altercation in order to seek escape. Thus, the Commonwealth sufficiently met its burden and disproved [Jeffries'] self-defense claim.

Trial Court Opinion, 6/1/2015, at 6-10 (citations and record citations omitted).

We agree with the trial court's well-reasoned analysis. Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we conclude that it was sufficient to disprove Jeffries' claims of self-defense and defense of others. First, Jeffries focuses much of his argument on the allegation that his own testimony should be considered more credible than the remainder of the evidence. The judge, sitting as the fact-finder, was not required to do so. *See Melvin*, 103 A.3d at 39-40.

Second, contrary to his argument, the physical evidence and the testimony of other witnesses refute Jeffries' testimony. While other individuals were engaged in a verbal argument that turned into a physical altercation, Jeffries was not involved in the dispute prior to drawing his gun. Further, as the court points out, the victims were all actively engaged in the argument with Jeffries' friends, and the evidence established Jeffries targeted these victims based on their relationship.

Third, he was the only individual at the party with a weapon. Jeffries even had removed himself from the altercation, stepped into a hallway, and

then took a moment to chamber a round before firing his weapon at several individuals, who were not in close range.[5] Because the location of the brawl was not at his home or place of work, Jeffries had a duty to retreat to another room before using deadly force. **See** 18 Pa.C.S. § 505(b)(2)(ii). Moreover, he escalated the contentious situation by using the weapon, which was more force than reasonably necessary, as the evidence did not demonstrate he was overwhelmed. **See Smith**, **supra**.

Lastly, despite Jeffries' assertion that he did not have enough time to act with malice, it is well established that malice can be inferred when a deadly weapon is directed to a vital part of the body. **See Commonwealth v. Roots**, 306 A.2d 873, 877 (Pa. 1973). Here, the bullet from Jeffries' gun struck the victim in the lung, a vital part of the body. **See id.** (finding malice can be inferred where death resulted from a stab wound to the chest, which penetrated the lung). Additionally, the evidence demonstrated Jeffries acted with a recklessness of the consequences when he introduced a gun into a fistfight. **See Fisher**, **supra**.

Accordingly, based on the circumstances of the case, we conclude the Commonwealth proved Jeffries escalated the altercation by drawing a weapon, he continued the attack beyond that which was reasonably

---

[5] Indeed, one can reasonably infer that based on his location, Jeffries was not engaged in a physical altercation with the victims prior to the shooting. Furthermore, he even admitted at trial that he "may have overreacted introducing the gun[.]" N.T., 11/3/2014, at 246.

- 15 -

necessary to defend himself and others, and he had a duty to retreat. Therefore, his sufficiency of the evidence claim for third-degree murder fails

In his second argument, Jeffries argues the verdict was against the weight of the evidence.[6] **See** Jeffries' Brief at 18. Specifically, he states the "judgment was unreasonable and the law misapplied because the Commonwealth did not prove that [Jeffries] failed to act in self-defense." **Id.** at 19. Moreover, he asserts:

> The greater weight of the evidence demonstrated that [Jeffries] did not start an argument with anyone; did not hit anyone; was standing there when "the team" approached his much smaller friend; when it certainly appeared to [Jeffries] as a reasonable person that his friend was about to be pummeled; that [Jeffries] feared for his own safety because others rushed at him and where under all of the circumstances and where [Jeffries] and his friends were greatly outnumbered by bigger, stronger people, it would not have been prudent [to] wait, and hope, that he and his friends were not severely beaten with injuries to be sustained that could only be guessed at.

**Id.**

Appellate review of a weight of the evidence claim is well-established:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. **Commonwealth v. Widmer**, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Champney**, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the

---

[6] Jeffries properly preserved his challenge to the weight of the evidence by raising it in a post-sentence motion. **See** Pa.R.Crim.P. 607(A).

> verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

Here, the trial court found the following:

> [Jeffries'] weight-of-evidence claim is without merit as the verdict was consistent with the evidence and a far cry from shocking one's sense of justice. The Commonwealth presented multiple eyewitnesses, who gave consistent accounts, that [Jeffries] was not engaged in the physical altercation; that [Jeffries] stepped away from the altercation, backed up, and fired at three unarmed individuals. In his statement to police, [Jeffries] also confirmed this version of the events.
>
> As discussed *supra*, the evidence sufficiently underscores [Jeffries'] malicious behavior, his wickedness of disposition, hardness of heart, recklessness of consequences, and disregard of social duty. Further, [Jeffries'] self-defense claim is unsupportable. Accordingly, the weight-of-the-evidence claim must fail, as the evidence was overwhelming as to [Jeffries'] guilt for Third-Degree Murder.

Trial Court Opinion, 6/1/2015, at 12 (record citation omitted).

We again agree with the court's well-reasoned analysis. Jeffries fails to explain in what manner the trial court abused its discretion in denying his weight claim. Rather, his argument consists largely of claims that the greater weight of evidence fell in his favor. As such, he asks this Court to reweigh the evidence; however, we decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our

judgment for the trial court's decision.  ***See Lyons***, ***supra***.   Therefore,

Jeffries' weight claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016