J-S65020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROGER J. MCBRIDE :
:
Appellant : No. 3494 EDA 2016

Appeal from the Judgment of Sentence October 19, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0000523-2016

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 27, 2018**

Roger J. McBride appeals from the judgment of sentence entered on October 19, 2016, in the Delaware County Court of Common Pleas.  On September 12, 2016, the trial court convicted McBride of third-degree murder, aggravated assault, recklessly endangering another person, and possession of a weapon.[1]  The court sentenced McBride to an aggregate term of 14 to 28 years' incarceration, followed by seven years' probation.  On appeal, McBride challenges the sufficiency and weight of the evidence.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court set forth the facts and procedural history as follows:

_____

[1]  18 Pa.C.S. §§ 2502(c), 2702(a)(1), 2705, and 3925(a), respectively.

On December 20, 2015, Lieutenant Joseph Pretti of the Eddystone Borough Police Department, responded to a residence at 1220 Saville Avenue in Eddystone, Delaware County, Pennsylvania, after receiving a call for a shooting at that address. When Lieutenant Pretti approached the residence, he was met by the person who called 911, Paul McGonigle. Mr. McGonigle advised Lieutenant Pretti that his friend who was shot, as well as the shooter, were still inside the residence. When inside of the residence, Lieutenant Pretti observed Roger McBride … seated at the dining room table, as well as the body of a female, later identified as Jami Vincent, lying on the floor with a gunshot wound to the head.

On December 20, 2015, Paul McGonigle arrived at 1220 Saville Avenue at approximately 5:45 p.m., as he was supposed to get together with his friends for dinner that evening. When Mr. McGonigle arrived at the house, he sat downstairs on the couch, waiting for his friends to get ready to go to dinner. While Mr. McGonigle waited on the couch, one of the friends, Jack Mooney, came downstairs to get shower supplies out of his bag. Mr. McGonigle greeted Mr. Mooney, but did not pay too much attention to what Mr. Mooney was doing as Mr. McGonigle was reading the news on his phone at the time. Mc. McGonigle did notice however, that Mr. Mooney removed a handgun from his bag and placed it on the table as he proceeded to take out his clothing from the bag. No one else was in the room with Mr. McGonigle and Mr. Mooney at that time. A few minutes later, Mr. McGonigle noticed [McBride] descend the stairs, and accordingly, he greeted him. [McBride] offered Mr. McGonigle a drink to which Mr. McGonigle declined. Within the next few minutes, Mr. McGonigle noticed [McBride] re-enter the room and saw that he had the gun in his hand. Mr. McGonigle noted that [McBride] commented that he liked the gun, stating that he liked the weight and the feel. Further, [McBride] kept switching the gun back and forth in his hands from right to left. Moments later, Jami Vincent came bouncing down the stairs, turned the corner into the living room and stopped in front of [McBride]. Next, Mr. McGonigle saw [McBride] extend his right arm and hold the handgun to Jami Vincent's head. Immediately thereafter, McGonigle heard a very low pop, saw a small [f]lash of light, and saw Jami fall to the ground. [McBride] in response started yelling, "oh my God, I didn't know it was loaded." Mr. McGonigle stood up, saw blood on the floor, before proceeding outside to call 911.

On Sunday, December 20, 2015, Jack Mooney, a Staff Sergeant with the United States Army, was staying at Jami Vincent's home as a weekend guest. Mr. Mooney arrived to the home on Friday evening, and brought his belongings into the house, including his backpack that contained his handgun. Additionally, on Friday evening, [McBride] brought a gun case out of Mr. Mooney's trunk into the house. Mr. Mooney had two firearms in that case, in addition to the one that he had in his backpack. Mr. Mooney showed each of the firearms to [McBride], while the magazine was out of the gun, meaning that the firearm was empty. After Mr. Mooney was handed back the gun, he put the magazine back inside of it and put it in his backpack. Mr. Mooney stated that on Sunday, December 20, 2015, he came downstairs to grab his shower supplies out of the bag where the handgun was located. Out of habit, Mr. Mooney stated that he cleared the gun, to ensure that there was no round in the chamber. Mr. Mooney further stated that he never keeps a round in the chamber of his firearms. Mr. Mooney placed the handgun on the coffee table, before heading back upstairs to shower.

On December 20, 2015, Detective Thomas Scarpato, Jr. was employed by the Delaware County Criminal Investigation Division in the homicide unit. On that evening, Detective Scarpato was called out to 1220 Saville Avenue for a reported homicide. When Detective Scarpato had arrived, the scene had already been secured and the suspect was taken off of location. After obtaining a search warrant, Detective Scarpato went back to 1220 Saville Avenue, and collected a gun, fire cartridge, shell casing, projectile, and a case containing other firearms, as evidence. Further, Detective Scarpato also secured a search warrant for the person of Roger McBride, and accordingly, [McBride] was swabbed and pictures of him were taken. One of the pictures included a picture of [him] showing blood splatter on his face. Next, Detective Scarpato attempted to interview [McBride], but [McBride] invoked his right to counsel. Detective Scarpato took notice of the strong odor of alcohol emanating from [McBride]'s person.

Detective Louis Grandizio is employed by the Delaware County Criminal Investigation Division as a firearms examiner[1]. Detective Grandizo examined the handgun that was used to kill Jami Vincent[2]. Detective Grandizo first determined that the gun was operable. Next, Detective Grandizio tested for accidental discharge and the gun passed the test, meaning that a person would have to purposefully fire for it to go off. Additionally,

- 3 -

Detective Grandizio conducted the trigger pull test to ensure that the gun required 7 pounds of pressure to pull the trigger, as the manufacture specified in the design. Further, Detective Grandizio examined the fire cartridge of the gun and examined the bullet specimens from the firearm. Detective Grandizio also noted that there was a blood-like substance on the frame of the gun.

_____

[1] There was a stipulation by and between counsel that Detective Grandizio is an expert in firearms examination, identification, and ballistics.

[2] Springfield A[r]mory, XD model, .45 caliber, automatic with serial number of S3221610.

_____

…

[McBride] was arrested on December 20, 2015. A bench trial was held in front of this Court on September 9, 2016, after [McBride] waived his right to a jury. The Commonwealth presented testimony from Paul McGonigle, Jack Mooney, Lieutenant Joseph Petti, Detective Thomas Scarpato, and Detective Louis Grandizio, all of whom testified to the facts as stated above. As its final witness, the Commonwealth called Dr. Frederick Neil Hellman, MD, the chief medical examiner for Delaware County.[3] Dr. Hellman testified that he made the determination, based on a reasonable degree of medical certainty, that the cause of death to Jami Vincent was a single gunshot wound to the head, and that manner of death was homicide. The Defense did not put up any witnesses or evidence.

This Court held its decision under advisement and gave counsel for both sides the opportunity to submit any case law that they wanted the court to review.[4] On September 12, 2016, this Court found [McBride] Guilty of Murder of the Third Degree[5], Aggravated Assault[6], Recklessly Endangering Another Person[7], and Possession of a Weapon[8].

_____

[3] Counsel stipulated that Dr. Hellman is an expert in the field of forensic pathology.

<sup>4</sup> The Commonwealth argued that [McBride] was guilty of Third Degree Murder, while counsel for [McBride] asserted that the lesser charge of Involuntary Manslaughter should have been applied under the circumstances surrounding Jami Vincent's death.

<sup>5</sup> 18 Pa. C.S. § 2502(c)

<sup>6</sup> 18 Pa. C.S. § 2702(a)(1)

<sup>7</sup> 18 Pa. C.S. § 2705

<sup>8</sup> 18 Pa. C.S. § 907(b)

_____

On October 19, 2016, after reading various letters and listening to testimony from family and friends on behalf of both the victim and [McBride], this Court sentenced [McBride] as follows: Count 1: Murder in the Third Degree 168 to 336 months SCI followed by 5 years consecutive probation; Count 3: Aggravated Assault plus serious bodily injury, merged with Count 1 for sentencing purposes; Count 4: Reckless Endangering Another Person 2 years' probation consecutive to Count 1; Count 5: Possession of an Instrument of Crime 2 years' probation to run concurrent to Count 4.[9]

_____

<sup>9</sup> At the sentencing hearing, the Court noted on the record, that the testimony of Jack Mooney was not considered credible at all, and thus this Court believed that the gun was loaded prior to the incident occurring.

_____

Trial Court Opinion, 12/22/2016, at 1-6 (record citations omitted). McBride

did not file post-sentence motions but did file this appeal.[2]

_____

<sup>2</sup> The court did not order McBride to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Nevertheless, he filed a concise statement on October 27, 2016. On December 22, 2016, the trial court issued an opinion under Pa.R.A.P. 1925(a).

- 5 -

In his first issue, McBride contends the evidence was insufficient to support his third-degree murder conviction because the Commonwealth failed to demonstrate that he acted with malice. **See** McBride's Brief at 10. Specifically, he argues: "[T]he evidence used by the Commonwealth to prove malice was insufficient because it did not rise to the 'magnitude of malice' necessary for a third degree murder conviction. Instantly, a search of the record reflects that the unfortunate killing in this case was accidental, unintentional and without evil design." McBride's Brief at 12-13 (citations omitted). He states the "record is devoid of even a scintilla of hatred, wickedness or ill will"[3] and points to the following: (1) he was a close friend of the decedent and "was in complete utter shock when the weapon was discharged;"[4] (2) his friends testified he "was a 'good guy' and viewed the incident as an accident;"[5] (3) he aided his friend in dispatching 9-1-1 after the shooting and cooperated with police; (4) his "first statement to police was that 'it was an accident and he didn't know [the gun] was loaded;'"[6] and (5) he "did not provide false and contradictory accounts of the events or attempt to

---

[3] McBride's Brief at 13.

[4] **Id.**

[5] **Id.**

[6] **Id.** at 13-14.

divert suspicion."[7]    Moreover, McBride contends:    "At most, the Commonwealth established that [he] was guilty of involuntary manslaughter since he caused the death of another person the unlawful act in a reckless or grossly negligent manner."  *Id.* at 15.  Lastly, he states the Commonwealth did not establish he acted with a motive and there was "no competent evidence that [he] intended to kill [the] decedent for any plausible reason."  *Id.* at 16.

Our well-settled standard of review regarding sufficiency of the evidence claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[7] *Id.* at 14.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted), *appeal denied*, 112 A.3d 651 (Pa. 2015).

> Regarding third degree murder … the statute simply states, "All other kinds of murder shall be murder of the third degree." [18 Pa.C.S.] § 2502(c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." ***Id.***, § 302(c) (emphasis added).

> Case law has further defined the elements of third degree murder, holding:

> > [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but … [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

> ***Commonwealth v. Santos***, 583 Pa. 96, 876 A.2d 360, 363 (Pa. 2005) (alteration in original) (internal citation, quotation, and emphasis omitted); ***see also Commonwealth v. Drum***, 58 Pa. 9, 15 (1868) (defining malice as quoted above). This Court has further noted:

> > [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

> ***Commonwealth v. Meadows***, 567 Pa. 344, 787 A.2d 312, 317 (Pa. 2001) (quoting ***Commonwealth v. Young***, 748 A.2d 166, 174-75, 561 Pa. 34 (Pa. 1999)).

***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013), *cert. denied*, 134 S.Ct. 2314 (U.S. 2014).

Turning to the present matter, the trial court found the following:

> [A]s third-degree murder requires a showing of malice which can be inferred from the use of a deadly weapon on a vital part of the victim's body, there is sufficient evidence to prove that [McBride] acted with the requisite malice. Evidence at trial showed that Jami Vincent died from a single gunshot wound to the head. Further, it is undisputed that [McBride] was the person who held a gun to Jami Vincent's head and pulled the trigger. As such, under the law there is sufficient evidence to support [McBride]'s third-degree murder conviction.

Trial Court Opinion, 12/22/2016, at 7.

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court's conclusion. We note "[m]alice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury." ***Commonwealth v. Cottam***, 616 A.2d 988, 1004 (Pa. Super. 1992), *appeal denied*, 636 A.2d 632 (Pa. 1993). Moreover, "[m]alice may be inferred from the use of a deadly weapon[8] on a vital part of the

---

[8] The Pennsylvania Crimes Code defines a "deadly weapon" as:

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner

victim's body. Further, malice may be inferred after considering the totality of the circumstances." ***Commonwealth v. Son Truong***, 36 A.3d 592, 598 (Pa. Super. 2012) (citations and quotation marks omitted), *appeal denied*, 57 A.3d 70 (Pa. 2012). Here, as the court pointed out, the evidence at trial clearly established McBride took Mooney's .45 caliber handgun, raised it to Vincent's forehead, and then pulled the trigger. ***See*** N.T., 9/7/2016, at 20. Vincent died as a result of McBride's actions. As such, one can reasonably infer malice where McBride used a deadly weapon on a vital part of Vincent's body. Furthermore, malice was established, as McBride acted with "recklessness of consequences" and "a mind regardless of social duty" when he decided not to check the gun to ensure that it was not loaded before he aimed at the victim's head and then fired the weapon. ***Santos***, 876 A.2d at 363; ***see Commonwealth v. Seibert***, 622 A.2d 361, 365 (Pa. Super. 1993) ("An intentional act which indicates recklessness of consequences and a mind regardless of social duty is sufficient, even if there was no intent to harm another."), *appeal denied*, 642 A.2d 485 (Pa. 1994).[9] While McBride may

in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301.

[9] ***See also Commonwealth v. Young***, 431 A.2d 230, 232 (Pa. 1981) (upheld third-degree murder conviction, concluding that "there was sufficient evidence to prove a malicious homicide beyond a reasonable doubt. Appellant intentionally pointed a loaded gun at the victim and shot him in the chest.

have been friends with the victim, aided in seeking medical assistance after the shooting, and did not demonstrate "hatred, wickedness or ill will,"[10] his actions did meet other categories included in malice. *See id.* Accordingly, his sufficiency argument fails.

McBride's second argument is a claim that the verdict rendered by the jury was against the weight of the evidence. *See* McBride's Brief at 17-19.

When considering a challenge to the weight of the evidence, we must bear in mind:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014). Our review of a weight claim is well-settled:

---

Under these circumstances, whether the gun discharged accidentally or was fired intentionally is irrelevant for the purpose of determining the existence of malice. Even if, as appellant claims, he did not know that the gun was loaded and intended only to 'scare' the victim, his conduct nevertheless unjustifiably created an extremely high degree of risk, thereby evincing a wanton and reckless disregard for human life. By intentionally aiming a gun at [the victim] without knowing for a certainty that it was not loaded, appellant exhibited that type of cruel and wanton conduct of which legal malice is made."); *Seibert*, *supra* (found circumstances established implied malice where defendant, not knowing for certain whether the gun was loaded, held the weapon against the victim and shot him; and this was not negated by the fact that the defendant and the victim were friends and there was no animosity towards each other on the night of the incident).

[10] McBride's Brief at 13.

- 11 -

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Here, McBride's weight claim has been waived because he failed to raise this issue prior to sentencing or in a timely post-sentence motion. *See* Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence **shall** be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion.") (emphasis added).[11] *See also Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa. Super. 2003) (providing that a weight of the evidence claim "must be presented to the trial court while it exercises jurisdiction over a matter since

---

[11] It merits mention that in his brief, McBride did not point to where in the record he preserved the claim.

- 12 -

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.") (citations and quotation marks omitted). Therefore, this claim is waived.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18