J-S37030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JASON HARDING | : | |
| Appellant | : | No. 883 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001709-2020

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:           **FILED FEBRUARY 6, 2023**

Jason Harding appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after being convicted by a jury of third-degree murder,[1] carrying a firearm without a license,[2] and carrying a firearm in a public place in Philadelphia.[3] After review, we affirm.

On December 21, 2018, Harding and four other individuals[4] were filming a "rap video" near 2100 Middleton Street in Philadelphia County. N.T. Jury

---

[1] 18 Pa.C.S.A. § 2502(c).

[2] *Id.* at § 6106(a)(1).

[3] *Id.* at § 6108.

[4] Harding was accompanied by his younger brother and three friends.

Trial, 9/1/21, at 70.[5]  At approximately 10:00 PM, the victim, Bernell Gibson, inquired as to what the group was doing on the street and requested that they leave.  *Id.*  When Harding first saw the victim approach the group, Harding saw a light and thought the victim was holding a firearm.  In response, Harding removed his firearm from his pocket.  Upon realizing the light Harding saw was the victim's phone, Harding placed his firearm under his shirt.  *Id.* at 76-77; *see* Exhibit D-1.

Harding testified that the victim's tone was "aggressive," *id.* at 70, and that the victim was "calling for somebody."  *Id.* at 71.  Harding "[saw the victim's] right hand [go] down[] his body [and go] sideways [] and it looked like he went to reach for something, that's when I started shooting."  *Id.* at 71.  Harding testified, "When I shot [the victim], I thought that he was going to try to reach for a gun and start shooting at me. . . . The first couple of shots [were] warning shots.  And then the second time I started shooting, it was [] out of fear."  *Id.* at 72.  Harding was "probably seven feet" away from the victim during the incident, *id.* at 75, and fired a semi-automatic firearm nine times.[6]  Detective Thorston Lucke testified that surveillance video shows "[the victim] turn and kind of run away as he's being shot."  *Id.*, 8/31/21, at 42.

_____

[5] The entire incident was captured on surveillance video and shown to the jury.  *See* Exhibit D-1.

[6] Detective James Poulos testified that nine .40 caliber shell casings were found at the scene and the casings were consistent with the firing of a semi-automatic weapon.  N.T. Jury Trial, 8/31/21, at 92, 110.

The parties stipulated that the victim died due to a gunshot wound to his torso. *Id.* at 117-18.

On September 7, 2019,[7] Harding was arrested and charged with murder, a violation of the Uniform Firearms Act, and possessing an instrument of a crime. A preliminary hearing was held on February 30, 2021, during which Harding pled not guilty to all charges. Harding proceeded to a jury trial on August 30, 2021, after which he was found guilty of third-degree murder, carrying a firearm without a license, and carrying a firearm in a public place in Philadelphia. Sentencing was deferred pending a pre-sentencing investigation (PSI) report and a mental health evaluation.

On November 19, 2021, the court sentenced Harding to an aggregate term of 22½ to 45 years' incarceration followed by 5 years of probation. Harding filed a timely post-sentence motion, which was denied. This timely appeal followed. Both Harding and the trial court complied with Pa.R.A.P. 1925. Harding raises the following claims for our review:

1. Whether the adjudication of guilt for [third-degree murder] is based upon insufficient evidence because the Commonwealth did not establish beyond a reasonable doubt that [Harding] possessed the *mens rea* necessary for [third-degree murder]?

2. Whether the adjudication of guilt for [t]hird[-d]egree [m]urder is against the weight of the evidence where the evidence adduced at trial established that the victim approached [Harding] with hostility[,] demanding that [Harding] and his

---

[7] Harding was identified and arrested by Philadelphia police when they were called to the scene of a robbery on September 8, 2019. N.T. Jury Trial, 8/31/21, at 11-12, 15.

- 3 -

friends[,] who were innocently shooting a rap video[,] leave the victim's neighborhood, where the victim reached for what [Harding] believed to be a weapon[,] and where [Harding] unreasonably believed that[,] under the circumstances[,] he was justified in using lethal force to protect himself or his friends

3. Whether the [sentencing c]ourt abused its discretion at sentencing

   a. when it sentenced [Harding] to an aggregate sentence of 22½ [to] 45 years[' incarceration] plus 5 years [of] probation where the aforesaid sentence is excessive and contrary to the norms underlying the Sentencing Code and therefore constitutes a substantial question that the sentence is inappropriate?

   b. where [it] failed to give proper weight to the mitigating factors set forth in the [PSI], the [m]ental [h]ealth [e]valuation[,] and by witnesses who testified at the [s]entencing [h]earing[,] and where this constitutes a substantial question that the sentence is inappropriate because it is contrary to the norms underlying the Sentencing Code?

Appellant's Brief, at 6-7 (reordered for ease of disposition).

Harding first claims that the evidence is insufficient to establish beyond a reasonable doubt that he acted with malice, the *mens rea* necessary for third-degree murder. Appellant's Brief, at 20-22. Specifically, he contests the inferences drawn by the jury that he exhibited malice based on the number of shots he fired at the victim and their direction of travel, and that the victim was either retreating or had ceased to be hostile. *Id.* at 20. Harding is entitled to no relief.

This Court's review of sufficiency claims is well-settled:

When reviewing challenges to the sufficiency of the evidence, [this Court] evaluates the record in the light more favorable to the Commonwealth as verdict winner, giving the prosecution the

- 4 -

benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, the court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented.

*Commonwealth v. Smith*, 146 A.3d 257, 261-62 (Pa. Super. 2016) (quotations and citations omitted).

Third-degree murder is defined as murder that is not first-degree murder (intentional killing) or second-degree murder (killing where defendant was a principal or accomplice in the perpetration of a felony). *See* 18 Pa.C.S.A. 2502(a)-(c). "To establish [third-degree murder], the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, *i.e.,* [] wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." *Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa. Super. 2011) (internal quotations and citations omitted). The jury need not inquire as to whether the defendant had a specific intent to kill. *Commonwealth v. Meadows*, 787 A.2d 312, 317 (Pa. 2001).

Evidence is sufficient to establish malice where a defendant shoots the victim in a vital part of his body. In *Commonwealth v. Crosley*, 180 A.3d 761, (Pa. Super. 2018), this Court found malice where the defendant fired his

weapon into the victim's torso, a vital part of the body, three times from about an inch away. *Id.* at 764, 767-78; *cf. Commonwealth v. Sepulveda*, 855 A.2d 783, 789 (Pa. 2004) (defendant was shot in the abdomen, a vital part of his body); *Commonwealth v. Drumheller*, 808 A.2d 893, 908 (Pa. 2002) (torso may be considered a vital part of the body).

In *Commonwealth v. Jones*, 271 A.3d 452 (Pa. Super. 2021), this Court found sufficient evidence of malice where the defendant intentionally fired a gun, in rapid fire succession, directly at the victim and did not stop shooting as the victim fell to the floor. *Id.* at 460. The *Jones* Court reasoned that the evidence was clearly sufficient to show malice where the defendant "intentionally fired a gun directly at [the victim]." *Id.*; *see Commonwealth v. Young*, 431 A.2d 230, 232 (malice established where defendant "intentionally pointed a loaded gun at the victim and shot him in the chest"); *Commonwealth v. Patterson*, 180 A.3d 1217, 1223 (Pa. Super. 2018) (malice established where defendant intentionally pointed a revolver at victim and fired, striking victim in the head).

Here, Harding intentionally fired a semiautomatic weapon nine times in the direction of the victim, striking the victim in his torso, a vital part of the body. N.T. Jury Trial, 8/31/21, at 92, 110, 117-18; *Patterson*, *supra*; *Jones*, *supra*; *Pappert*, *supra***.** Moreover, evidence supports the determination that the victim had either ceased to be hostile or was retreating. In particular, Detective Lucke testified that the victim was holding a cell phone, not a weapon, and was backing away from Harding and his friends as

Harding continued shooting. ***Id.*** at 42, 44 (Detective Lucke testifying "[Y]ou see the cell phone flickering in [the victim's] hand there. Shooting happens.").

In light of the foregoing, and giving the Commonwealth the benefit of all reasonable inferences, the evidence is sufficient to establish, beyond a reasonable doubt, that Harding acted with malice. ***Smith***, ***supra***.

Harding next claims that his adjudication is against the weight of the evidence where he was justified in using lethal force on the victim, who was aggressive and hostile to Harding and his friends. This Court reviews weight of the evidence claims for an abuse of discretion:

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. [This Court] cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, [this Court's] role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Hunzer***, 868 A.2d 498, 506-07 (Pa. Super. 2005). Additionally, "[a] motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to review the evidence in the light most favorable to the verdict winner." ***Commonwealth v. Dupre***, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citations omitted).

"A successful claim of self-defense negates the malice element of third-degree murder." ***Commonwealth v. Marks***, 704 A.29 1095, 1099 (Pa. Super. 1997) (citation omitted). There must, however, be some evidence to justify a finding of self-defense. ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001).

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. ***See*** 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense.

***Id.*** at 345 (citations omitted).

> [I]t must be shown that [(1)] the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; [(2)] the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and [(3)] the actor did not violate any duty to retreat or to avoid the danger.

***Commonwealth v. Harris***, 665 A.2d 1172, 1174 (Pa. 1995) (citations omitted).

> A corollary to the defense of justification or self-defense is [] imperfect self-defense. As our Supreme Court has characterized this defense:
>
> > A self-defense claim under this theory is imperfect in only one respect–an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [still be met in order to establish] unreasonable belief voluntary manslaughter. [(***Commonwealth v. Serge***, 837

- 8 -

> A.2d 1255, 1265-66 (Pa. Super. 2003) (citing] ***Commonwealth v. Tilley***, [] 595 A.2d 575, 582 (Pa. 1991)).

***Commonwealth v. Austin***, 906 A.2d 1213, 1222 (Pa. Super. 2006) (internal quotations omitted).

Instantly, Harding argues he was acting in self-defense or in defense of another when he fired shots at the victim. Harding supports his defense with the following facts: He did not initiate the violence; he, his brother and his friends were innocently and lawfully filming a rap video; the victim was aggressive and hostile when he approached the group; the victim began calling down the block for assistance; and Harding observed the victim reaching for something, which Harding believed to be a gun. Appellant's Brief, at 18-19. Harding's weight of the evidence claim is without merit.

Although Harding testified that the victim's tone was "aggressive," ***id.*** at 70, and that the victim was "calling for somebody," ***id.*** at 71, Harding's testimony is devoid of any claim that the victim threatened the group with a deadly weapon. Additionally, Harding conceded that he did not see the victim holding a weapon. ***Id.*** at 77; ***see Jones***, 271 A.3d at 461 (no self-defense where no weapon of any kind was found on victim and threats from victim did not involve use of firearm or another weapon).

Moreover, the jury is free to make credibility determinations and adopt Detective Lucke's testimony as opposed to Harding's testimony. ***See Hunzer***, ***supra***. While Harding testified it looked like the victim was reaching for a gun and this prompted Harding to fire his weapon, ***see*** N.T. Jury Trial, 9/1/21, at

72, Detective Lucke testified, "[Y]ou see the cell phone flickering in [the victim's hand there. Shooting happens." *Id.* at 44. Detective's Lucke's testimony supports the determination that Harding and the group were not in imminent danger because the victim was holding his phone, not a firearm.

Moreover, the evidence shows that the victim was turning away from, and moving in the opposite direction of, Harding as Harding shot at the victim. N.T. Jury Trial, 8/31/21, at 42. This testimony is supported by the surveillance video showing the victim backing up and turning away as Harding continued shooting. *See* Exhibit D-1. This evidence, showing that the victim attempted to flee, supports the determination that Harding and the group were not in imminent danger.

Additionally, the evidence shows Harding was able to retreat to his car in complete safety. In *Commonwealth v. Yanoff*, 690 A.2d 260 (Pa. Super. 1997), this Court found a violation of the duty to retreat where "at all times [during the incident], [defendant] was near his car." *Id.* at 264. Here, Harding was near his car at all times, including when the victim first approached the group and when the victim began calling for somebody. Instead of driving away, Harding intentionally positioned himself behind the car, *see* N.T. Jury Trial, 9/1/21, at 73, and moved the firearm from his pocket to under his shirt. *Id.* at 76-77; *see* Exhibit D-1. Harding violated his duty to retreat.

The trial court did not palpably abuse its discretion in finding that Harding was not acting self-defense or defense of another. **Hunzer**, **supra**. Accordingly, his weight of the evidence claim must fail.[8]

Harding's third claim challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. **See Commonwealth v. Austin**, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. **Commonwealth v. Yanoff**, 690 A.2d 260, 267 (Pa. Super. 1997). Prior to reaching the merits of a discretionary aspects of sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

---

[8] Harding's claim that the "first couple of shots [were] warning shots," N.T. Jury Trial, 9/1/21, at 72, is belied by the record. The surveillance video shows Harding pointing his weapon in the direction of the victim. Exhibit D-1; **see Commonwealth v. Kresege**, 240 A.3d 905, *11 (Pa. Super. 2020) (unpublished memorandum decision) (where testimony indicated defendant pointed the gun upward, Court characterized as "warning shot"). Even if Harding could justify the warning shots, he continued to fire his weapon another seven times, **see** N.T. Jury Trial, 9/1/21, at 76, while the victim was "turn[ing] and kind of runn[ing] away, **id.**, 8/31/21, at 42, and, thus, used excessive force. **See Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012) (no self-defense where defendant uses "more force than reasonably necessary to protect against death or serious bodily injury").

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Presently, Harding filed a timely notice of appeal and preserved his issues in a post-sentence motion for reconsideration. Further, Harding's brief includes a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f). Thus, we must determine if Harding raises a substantial question.

A substantial question exists when "the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Austin*, 66 A.3d 789, 808 (Pa. Super. 2013). Additionally, "we cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018).

Harding's Rule 2119(f) statement and questions presented on appeal allege that the sentencing court abused its discretion in sentencing because it failed to "give due consideration [his] mitigating circumstances," including the PSI report, mental health evaluation and witness testimony at the sentencing hearing. Appellant's Brief, at 7, 14. Harding also claims his sentence is excessive and contrary to the norms underlying the Sentencing Code.

Appellant's Brief, at 7. When considered together, these claims pose a substantial question.[9]

A defendant poses a substantial question where he makes an excessiveness claim in conjunction with an assertion that the [sentencing] court failed to consider mitigating factors. *Mouzon*, 812 A.2d 617, 627 (Pa. 2002) (substantial question raised where defendant sufficiently articulates that a sentence violates a particular fundamental norm underlying the sentencing process); *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (excessiveness claim asserting trial court failed to consider mitigating factors raises a substantial question); *see Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005) (same). As such, we may review Harding's claim on the merits to determine if he is entitled to relief.

In its Rule 1925(a) opinion, the trial court explained it considered the following when sentencing Harding:

A [PSI] as well as a mental health evaluation had been prepared and examined in this case[. In addition, a] sentencing memoranda [was] prepared by the parties as well as letters on behalf of the defendant and [a statement regarding] the impact upon the victim's family. The sentencing guidelines direct an offense gravity score of [14]. Harding's prior record score was [1]. The

---

[9] We note that Harding's abuse of discretion claims individually do not raise a substantial question. In *Commonwealth v. Downing*, 990 A.2d 788 (Pa. Super. 2010), this Court determined that, "inadequate consideration of mitigating factors does not raise a substantial question for our review." *Id.* at 794. Additionally, in *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2022), our Supreme Court stated that "[t]he obligation lies with the challenging party to say why that sentence is manifestly excessive – failure to do so is failure to raise a substantial question." *Id.* at 628.

- 13 -

> deadly weapon matrix recommends a guidelines minimum range of one hundred and two months to the statutory limit of two hundred and forty months. [The sentencing court considered] the nature of the crime, the defendant's background, the likelihood of rehabilitation and the need for the public to be protected from his behavior by [Harding] again. [Harding was sentenced] within the guidelines.

Trial Court Opinion, 5/2/22, at 9-10. Therefore, Harding's claim that the trial court failed to consider Harding's "great deal of family support" as described in the mental health evaluation, **see** Appellant's Brief, at 23, and the PSI's determination that Harding suffered no physical abuse or neglect growing up, the presence of which would indicate risk to the community and danger of reoffending, **id.**, is meritless. The trial court considered these circumstances in fashioning Harding's sentence.

Additionally, Harding's claim that his sentence is excessive because the trial court failed to consider provocation by the victim and that Harding believed he was saving the lives of the people he was with, Appellant's Brief, at 23, affords him no relief. Because Harding was not acting in self-defense or in defense of others, the trial court did not abuse its discretion by not considering self-defense as a mitigating factor. **See** N.T. Sentencing, 11/19/21, at 40; **see also Commonwealth v. Reynolds**, 835 A.2d 720, 735 (Pa. Super. 2003) (jury did not accept defendant's justification defense and, "accordingly, self-defense could not have reasonably been considered as a mitigating factor at sentencing").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2023